GEORGE BENNETT, by his next Friend, v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, Appellant.

Division One, March 29, 1912.

1. **TRIAL: Province of Jury: Evidence.** If there is material evidence tending to prove a cause of action, although it conflicts with other evidence, or if an inference can be legally drawn from undisputed evidence which tends to prove a cause of action although a contrary inference might be legally deduced, then the case is for the jury.

2. **NEGLIGENCE: Privileges of Licensees on Railroad Tracks: Duty of Licensees.** Laborers employed by a contractor to whom a terminal railroad association lets work in its yards, are privileged to be on and about its yards and to use the same to the extent implied from their avocations, and for all reasonable and proper purposes of entering and leaving the places where they are at work, though they must use the yards and tracks with due regard to the danger arising from the necessary movement of trains.

3. ————: **Care Due to Licensees in Railroad Yards.** A terminal railroad association owes to the employees of a contractor to whom it lets work in its yards that degree of care and watchfulness which an ordinarily prudent person would exercise under similar circumstances to prevent injury.

4. ————: **Last Clear Chance Doctrine.** The person who has had the "last clear chance" to avoid injuring another who is, whether negligently or not, in a position of apparent peril, must exercise ordinary care to prevent the injury, else he will be liable on the ground that his failure to exercise such care was the proximate cause of the injury.

*Held*, by VALLIANT, J., concurring in the result, that the doctrine which allows recovery in some cases despite the contributing negligence of the person injured is well called the "humanitarian doctrine," for it is simply an exception, on humanitarian grounds, to the general rule. For example, when an engineer sees a man in peril on his track, or, even though he does not see him, is running his engine through a district where he knows people are likely to be upon the track, and can save his life by a mere lifting of his hand, he is not excused for failing to do so by the fact that the man was guilty of negligence in going on the track.

5. ————: ————: **Evidence: Directed Verdict.** Where the plaintiff, a workman employed by a contractor in defendant's yards, testified that he did not see the train that struck him until it was right upon him; and the engineer testified that his view was obstructed by the tank of the tender while his engine backed so that he did not see the plaintiff when he was struck; and where the lookout on the front of the tender, corroborated by another witness, says that he saw the plaintiff in a position of danger when 150 feet away, that he was warned and stepped in the clear, and then, while attempting to board a train going in an opposite direction, backed into danger just at the time the tender reached him, there is no basis for the application of the "last clear chance" rule for the plaintiff's benefit, and the trial court should have directed a verdict for defendant.

6. **TRIAL: Province of Jury: Testimony of Adverse Party.** When the defendant, after having introduced evidence, seeks to have the case taken from the jury by a peremptory instruction, the plaintiff is entitled to the benefit of the probative force of testimony given on behalf of the defendant, or any legitimate inferences therefrom.

Appeal from St. Louis City Circuit Court.—*Hon. Virgil Rule,* Judge.

REVERSED.

*McKeighan & Watts, Wm. P. Gentry, T. M. Pierce* and *J. L. Howell* for appellant; *G. T. Priest* and *S. P. McChesney* of counsel.

The court erred in refusing to direct a verdict in favor of defendant: (a) Because the plaintiff was injured solely through his own negligence in suddenly stepping from a position of safety in front of the moving engine and tender. Lennon v. Railroad, 198 Mo. 514; Giardina v. Railroad, 185 Mo. 330. (b) Because the plaintiff was a workman whose business took him about the railroad tracks, and as it was his duty to look out for the movement of cars, the humanitarian doctrine had no application. Degonia v. Railroad, 224 Mo. 564; Van Dyke v. Railroad, 230 Mo. 259; Brockschmidt v. Railroad, 205 Mo. 435; Ginnochio v. Railroad, 155 Mo. App. 163; Hitz v. Railroad, 152 Mo. App. 687.

*Rassieur, Buder & Buder* for respondent.

(1) The facts bearing on the issue of contributory negligence are disputed, or when they are undisputed but admit of different constructions and inferences, the issue must be left to the jury. Eckhard v. Transit Co., 190 Mo. 593; Waddell v. Railroad, 213 Mo. 8; White v. Railroad, 202 Mo. 539; Felver v. Railroad, 216 Mo. 195; Ellis v. Railroad, 234 Mo. 673. (2) The law is well settled now in this State, that where one oblivious of his danger is run down and injured by a train, the company is liable, if the catastrophe occurred where it is entitled to a clear track, only when the engineer or those in charge of the train actually saw the injured in time to have averted the collision. But where it has no right to assume the track is clear and may anticipate the presence of persons on the

track at all times, then the law imposes upon it the duty of keeping a watchful lookout for them and the duty of exercising ordinary care to avoid injuring them. Murphy v. Railroad, 228 Mo. 56; Ellis v. Railroad, 234 Mo. 657.

BOND, C.—Plaintiff, seventeen years of age, was an employee of a contractor who had been engaged by defendant to install for it a block system of signals for use in its tracks and yards in St. Louis and at other points. Plaintiff had been doing this work for six weeks or two months. It was the custom of defendant to provide for plaintiff and persons in the same service a "plug" train which would take them to their work across the river in the morning and bring them back in the evening. This train stopped at a point in the city of St. Louis near which Eighth street extended to double tracks owned by defendant. The street did not cross these tracks but lay entirely south of them.

On the 8th of July, 1908, plaintiff, in company with his foreman and others, returned on this train to its stopping point, about 5:20 p. m. After they debarked, plaintiff was told by his foreman that the pay train would not be in that afternoon, and probably on that account the men would not be paid on that day. Plaintiff then observed that two of the men who had come over with him and who had left while he was talking to his foreman were about to enter into a curve which the defendant's two tracks describe at that point, and through which, over an elevation beginning at the point where plaintiff was standing, they proceeded across trestle works for about four blocks and then six blocks due west until they reached the union station. Plaintiff's employers kept an office in the yards at the union station, where plaintiff and his fellow-workman were paid, and plaintiff says he

Bennett v. Railroad.

intended to use these tracks as a pathway to said office. At the point where plaintiff stood there was an embankment about two feet above the surface, which was the beginning of the elevation of the two tracks, which increased until the trestles were reached. It was upon this embankment and the succeeding trestles plaintiff had seen the other men proceed. When plaintiff started to follow them, he says, ''And in going on the highline I *looked* east and saw this train bearing down westbound, and with that I stepped on the north track and was standing there with the intention of letting that pass;'' that he was then struck by the tender of an engine which was backing eastwardly on the said north track and pulling a train of freight cars, causing the injury sued for—the loss of an arm and severe bruises about the jaw and face.

The only time plaintiff looked to the west was when he observed his two companions taking that direction. He then saw nothing of the approaching freight train coming eastwardly over the north track, and he never saw that train at any time until it was so close to him that he could only make one step southwardly as he was struck by the tender of the engine. Plaintiff's exact language is as follows: ''The only recollection I have of the train coming in an opposite direction is when it was just about on top of me; then I have just a faint recollection of seeing it and making an effort to jump when it struck me, and that is as far as the recollection goes.'' Plaintiff stated that during his employment he had been nearly every day in the defendant's yards. He stated further, ''But it was a known fact to be careful of trains because we had talked about that often.'' At the time plaintiff was hit, he testifies he was ten or fifteen feet distant from the curve of the two tracks; that he did not remember whether he could ''see around it or not;'' that his im-

pression was that the distance between the two tracks where he stood was eight or nine feet. The engineer in charge of the eastbound freight train was a witness for plaintiff, and testified that whilst his train was coming east at a distance of 340 feet he saw two men on the south track; that these men walked east on the south track; that he did see either of them afterwards; that the tank of the tender obscured his view for a certain distance; and that he did not see the plaintiff when he was hit.

Defendant adduced evidence tending to prove that plaintiff was seen by a man who was stationed on the east end of the tender of the engine that was drawing the freight train eastwardly on its north track at a distance of 150 to 250 feet; that he was then standing at a point between the north and south tracks close enough to the north track to be injured if he remained stationary until the freight train reached that point; that the two tracks at that point were ten or eleven feet apart; that when the plaintiff was seen, the whistle blew and the bell was rung; and the plaintiff turned and looked "and stepped into the clear" when the freight train had reached a distance of about seventy-five feet from him; that the plaintiff's injury was caused from his having run sidewise for some distance apparently to get on the moving train coming westwardly over the south track, and having moved backwards just as the tender of the eastbound train reached the place where he was.

Another witness for defendant testified that he came over that afternoon with plaintiff on the "plug" train, and that plaintiff proposed to him that they catch the westbound train and ride in it over the south track to the union station; that he warned plaintiff to look out for the freight train coming eastwardly over the north track, which witness called a "drag train;" that plaintiff answered "all right;" that there-

Bennett v. Railroad.

upon he went eastwardly and about one hundred feet from plaintiff found an open vestibule and got on the steps of the westbound train which had been stopped awaiting a signal before proceeding to the station; that it immediately moved westwardly in response to a signal, and as he approached the place where plaintiff was standing he "hollered" to him to look out for the eastbound train on the north track; that plaintiff seemed not to hear him, and he observed plaintiff back towards the eastbound train when it was only three or four feet distant from him; that plaintiff seemed to be looking for the opening of a vestibule door so he could catch the westbound train; that he saw the tender of the eastbound train at the southeast corner when it "knocked him a somersault;" that witness then jumped off the train on which he was riding and went back to the place of the injury.

Defendant requested a peremptory instruction to find in its favor. Defendant also excepted to the ruling of the court excluding its offer to prove that at the point where plaintiff was hurt the distance between the trains was ten or eleven feet, and that a person could stand safely in that space without being hit by two trains passing him at the same time in opposite directions.

A verdict was rendered for plaintiff for $10,000, from which defendant duly appealed.

## OPINION.

I. The questions presented are: First, the correctness of the action of the trial court in overruling the demurrer to the evidence; second, the correctness of its ruling excluding the testimony as to the width between the two tracks at the point where plaintiff was injured.

If there is material evidence tending to prove a cause of action, although conflicted by other evidence;

or if an inference can be legally drawn from undisputed evidence which tends to prove a cause of action, although a contrary inference might be legally deduced; then the plaintiff has a constitutional right to have the jury decide which of the two conflicting theories of fact shall prevail. This rule marks the line of division between the duty of the court to declare the law and the power of the jury to find the facts. Unless, therefore, a cause of action is unproven, as to its essential elements, either by fact or legal inference, the case must go to the jury.

To solve the question presented by the refusal of the trial court to sustain the demurrer to the evidence, the facts of this case must be analyzed in the light of the rules of law applicable to the evidence and the reasonable inference therefrom.

The laborers employed directly by defendant, and also those employed by any contractor to whom it let work in its yards, were privileged to be on and about its yards and to use the same to the extent implied from their avocations, and for all reasonable and proper purposes of entering and leaving the places where they were at work. The reciprocal duty rested upon such employees to use the yards and tracks of the defendant with due regard of the danger arising from the necessary movement of trains of cars. This danger and the importance of taking care to avoid it was known to the plaintiff, for he so testifies. To him and all others whom it might expect to be in its yards and about its tracks, the defendant owed that degree of care and watchfulness which an ordinarily prudent person would exercise under similar circumstances to prevent injury. Unless there was a failure of this duty and unless such failure was the proximate cause of plaintiff's injury, he could not recover, for plaintiff's action is only predicable on the negligence of defend-

ant; and failing that negligence, no cause of action can exist.

We do not understand counsel for plaintiff to deny that the plaintiff had negligently taken a position which exposed him to danger from a train which might be moved eastwardly over the northern track of defendant if he stood there when such train reached the same place; but we understand him to insist that the persons in charge of the eastbound train of defendant either knew, or by reasonable care would have known, that plaintiff had placed himself so near the track over which such train was moving that he would be injured, and that this was or could have been known by due care when the train was at such distance from plaintiff that it could have been stopped by ordinary care before it reached him, and the injury thereby prevented. This theory is based upon the assumed application of the doctrine that the party who has the "last clear chance" to avoid injuring another who is in a position of apparent peril whether negligently or not, must exercise ordinary care to prevent the injury, or he will be liable on the ground that his failure to exercise such care was the *proximate* cause of the resulting injury. The liability thus incurred is imposed by law because the injury is inflicted by the *subsequent* negligence of the person whose moral and legal duty it was to use due care to prevent it. It does not involve the abolition of the rule forbidding a recovery by a party who suffers injury resulting directly from his own contributory negligence. For it is not his negligence but the subsequent negligence of the wrongdoer which the law regards as the proximate and efficient cause of the injury. It is on this ground alone that the rule is sustainable, and it has now become definitely established in the jurisprudence of this State. [Klockenbrink v. Railroad, 172 Mo. l. c. 687;

affirmed same case 81 Mo. App. 351, and cases cited. See also subsequent rulings of this court.]

We are utterly unable to find in the facts of this case any room for the application of this doctrine. The plaintiff testified in positive terms that he never at any time prior to the moment when the eastbound train was right upon him saw that train or had any knowledge of its approach. The only other witness called by plaintiff was the engineer of this train, who states that he never saw the plaintiff except at one time; that he observed two men, one of whom might have been plaintiff; that both of these men were on the south track walking east and were not on the track over which his own train was moving. Giving full effect to the testimony of these witnesses, which were all had by the plaintiff, there is still a complete dearth of any evidence tending to show that plaintiff was seen, or could by ordinary care have been seen, in a position of danger by the persons in charge of the east-bound train. When the two men were seen by the engineer, they were, as far as his train was concerned, in a position of safety, for they were not on its tracks at all. Hence, there is no room for the application of the rule as to the "last clear chance" to be found in the testimony given on plaintiff's behalf, or upon any inference which could reasonably be drawn from that testimony.

But the plaintiff is entitled to the benefit of the probative force of testimony given on behalf of the defendant, or any legitimate inference arising there-from. Taking therefore, the testimony given for defendant, and we have two witnesses, one of whom was a lookout placed on the east end of the tender of the locomotive which was drawing the freight train over the north track. This witness testified, that he observed plaintiff in a position of danger at a distance of 150 feet; that the whistle was sounded and the bell

rung; that plaintiff looked around and moved southwardly "into the clear;" that is, to a point where he would be entirely safe; that the plaintiff's injuries were caused solely by his intent and purpose to catch the train which was moving in the opposite direction on the south track, which was manifested by his running in the same direction of that train in a sidewise way, and afterwards backing over so as to be struck by the southeast corner of the tender going in the opposite direction. This testimony was corroborated as to the conduct of plaintiff by another witness. We are unable to see how it affords any basis whatever for the application of the rule relied upon by counsel for respondent. Its entire evidentiary force tends to show that the plaintiff's negligence or youthful heedlessness directly contributed to his injury, and that his injury was not caused by any *later* negligence on the part of the defendant, for the testimony of its witnesses discloses no negligence either primary or secondary on the part of the defendant.

Under the testimony given for plaintiff, we can find no legal basis upon which to infer negligence on the part of the defendant. And since the evidence of plaintiff is not helped or aided in any respect by that given for defendant, we are wholly unable to find anywhere in the record a valid reason for the refusal by the trial court of the request made at the end of the whole case, to direct a verdict for defendant.

This renders it unnecessary to consider the error assigned as to the exclusion of testimony tending to prove that the distance between the two tracks rendered it safe for a person standing between them while trains were passing in opposite directions.

As the record in this case discloses a failure to prove the cause of action alleged and affords no intimation that it could be supplied on a new trial, the judgment will be reversed for the error of the trial

court in failing to direct a verdict for defendant; and the cause will not be remanded. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BOND, C., is adopted as the opinion of the court. *Graves, P. J.,* and *Woodson, J.,* concur. *Valliant* and *Lamm, JJ.,* concur in result in separate opinion by *Valliant, J.*

## SEPARATE CONCURRING OPINION.

VALLIANT, J.—I concur in the result reached by the learned commissioner and in all that is said in the opinion except what is said on the subject of what is therein called the "last clear chance" doctrine and the reason on which it is founded.

There is something in a name, in spite of what has been said to the contrary, and when two names refer to the same subject sometimes the choice between them gives some indication of the meaning intended to be conveyed. When discussing the exception to the rule that precludes a plaintiff from recovering on account of his own contributory negligence in an action founded on the negligence of the defendant, this court in Kellney v. Railroad, 101 Mo. 67, and in like cases of subsequent date, has usually denominated it the humanitarian doctrine and has justified it on the ground of humanity alone, refusing to apply the general rule of contributory negligence when to do so would excuse a defendant in killing or inflicting an injury which he might have avoided after he discovered the peril in which the plaintiff had placed himself by his own negligence.

The term "last clear chance" is usually preferred in the arguments of counsel who oppose this doctrine and in those arguments the doctrine is said to rest on the theory of primary and secondary negligence, that is, conceding that in the beginning the situ-

ation of peril was brought about by the concurrent negligence of both plaintiff and defendant, yet if, on discovering the peril, the defendant fails to use ordinary care with the means at hand, to save life, he commits a second act of negligence which results in the killing or injuring of the plaintiff, then the defendant is liable unless the plaintiff, at the instant of the accident, is himself guilty of negligence which then and there contributes with this second act of defendant's negligence to produce the result, in which event the defendant is not liable.   There has never been a case in this court in which the defendant would have been held liable if that were the reason on which the exception in relation to contributory negligence rested.   That has never been the doctrine of this court.   That theory was advanced in Holwerson v. Railroad, 157 Mo. 216, but it was not adopted as the opinion of the court.

If a plaintiff chooses his path in the center of a railroad track where he knows a train is liable to come, paying no attention to the situation, and along comes a train, running at a rate of speed forbidden by law, which strikes and injures the plaintiff, nothing more appearing, the plaintiff cannot recover, because his own negligence contributed with that of the defendant to produce the result.   But if the engineer saw the plaintiff on the track and realized that he seemed oblivious to his danger, if he could then with the means at hand and by the exercise of ordinary care have aroused the plaintiff from his apparent inattention to the situation or could otherwise have prevented injuring him, but failed to do so, the court would say that such case makes an exception to the general rule in regard to contributory negligence. And sometimes, although the engineer may not have actually seen the plaintiff on the track, yet if he was running his engine through a street of a city where he knew people were likely to be or in the country along a track where he

knew people, though not having a right to do so, were liable to be walking, the consequence would be the same. The liability of the railroad company under such circumstances would rest, not on an inquiry as to primary and secondary negligence, but on an exception to the rule, an exception which the cry of humanity demands.

When an engineer sees a man in peril on the track and can save his life by a mere lifting of his hand he is not excused for failing to do so by the fact that the man was guilty of negligence in going on the track. Humanity revolts at the idea of unnecessarily killing a man merely because he is negligent. That is what this court means when it refuses to apply the general rule of contributory negligence to excuse the killing or crippling of a man in such case, and that is why we call it the humanitarian doctrine. This doctrine is clearly stated in Murphy v. Railroad, 228 Mo. 56. *Lamm, J.,* concurs in this opinion.