**Thomas Sage, Administrator, Defendant in Error, v. W. O. Johnson, Receiver, Plaintiff in Error.**

### Gen. No. 6,324.

1. CARRIERS, § 476*—*when evidence sufficient to show negligence of motorman and due care of intending passenger.* Evidence *held* sufficient to warrant the finding that the motorman operating defendant's interurban car was negligent and that plaintiff's intestate was in the exercise of due care for his own safety at the time he was struck by said car, which was while crossing the track to the platform to take the car, on its arrival.

2. TRIAL, § 195*—*when direction of verdict improper.* Where there was some evidence tending to show defendant was negligent and that plaintiff's intestate was in the exercise of due care when he was struck and killed by defendant's interurban car, *held* that

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

a directed verdict for the defendant was properly refused, in an action to recover damages on account of intestate's death.

3. CARRIERS, § 482*—*when instruction in action for death of intending passenger killed by street car is erroneous.* An instruction, in an action to recover damages for loss to the next of kin of an intestate killed by defendant's interurban car while crossing the track to the platform to take the car, on its arrival, that the place where the accident occurred was not within an incorporated city and that there was no ordinance or law restricting the speed of cars as they approached such place, *held* to be erroneous where neither the pleadings nor the evidence referred to any ordinance or statute, and the question of the propriety of the speed of the car depended on the facts concerning the motorman's duty to stop at such place because of a prevailing custom and the signals and presence on the platform there of a person, which facts the instruction ignored.

4. INSTRUCTIONS, § 482*—*when instruction singling out facts is erroneous.* An instruction which singled out one particular fact and stated that that fact alone and of itself was not evidence of negligence of defendant's motorman, in an action to recover damages for loss to next of kin of plaintiff's intestate killed by defendurban car operated by such motorman, *held* to be erroneous.

5. CARRIERS, § 482*—*when instruction in action for death of intending passenger properly refused.* In an action to recover damages for loss to next of kin of plaintiff's intestate killed by defendant's interurban car while crossing the track to the platform to take the car, on its arrival, an instruction that if intestate knew the car was coming in time to avoid being struck by it, it made no difference whether or not the motorman of the car sounded the whistle for the crossing where the intestate was struck by the car, *held* properly refused, as it ignored the evidence tending to show that the intestate had a right to expect the car would stop before it reached the crossing.

Error to the Circuit Court of Lake county; the Hon. CLAIRE C. EDWARDS, Judge, presiding. Heard in this court at the October term, 1916. Affirmed. Opinion filed February 10, 1917. Rehearing denied April 12, 1917.

BULL & JOHNSON and CHARLES H. KING, for plaintiff in error.

C. HELMER JOHNSON and JAMES G. WELCH, for defendant in error; ARTHUR H. CHETLAIN, of counsel.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE DIBELL delivered the opinion of the court.

James Sage was killed on a highway crossing by an interurban car operated by plaintiff in error. Sage's administrator brought this suit against the receiver of said interurban line to recover damages for the loss to the next of kin, and on a jury trial had a verdict and a judgment of $1,000. The receiver brings the judgment here for review by writ of error and contends that the evidence did not warrant the jury in finding that the deceased was in the exercise of due care nor that the motorman running the car was negligent, and that therefore the court should have directed a verdict for the receiver; and that the court erred in refusing certain instructions requested by the receiver.

The Chicago & Milwaukee Electric Railroad Company has a branch line running from Lake Bluff west to Rockefeller. Libertyville is the only regular station between the termini of the branch road, but it stops on signal at various highway crossings. Something like two miles east of Libertyville the road is crossed by a north and south highway, and that is called St. Mary's crossing. The road has a double track. At St. Mary's crossing there is an elevated platform and a small station building on the south side of the tracks, and a platform one step high opposite that on the north side. Eastbound cars go by on the south track and westbound on the north track. This branch road operates but one car, which leaves Lake Bluff on the even hour and Rockefeller on the even half hour. The platforms at St. Mary's crossing are east of the highway. The car stops at one of those platforms if signaled by the conductor to permit any one to leave the car, and also if any one on the platform from which the car is entered signals the car, and the presence of a person on the platform is itself a signal to stop. On Sunday evenings the car usually stops at St. Mary's

crossing, and this accident happened on a Sunday eve-
ning. James Sage, seventy-nine years old, and his
wife had come from Libertyville that afternoon and
got off at that crossing and had gone south to visit
relatives, and had come back in a sleigh with a team
driven by a grandson, George T. Hoffman, to take the
evening car to Libertyville. When they reached the
crossing the car was coming over a hill at the east and
the headlight shone upon the wires and the leaves of
trees above them. Hoffman turned his team up to a
telegraph pole south of the tracks and called out that
he would signal the car and ran ahead and across the
tracks and east onto the platform on the north side,
which was where the car would take on passengers
going to Libertyville. The old people got out of the
sleigh and hurried across. Hoffman was on the plat-
form before the car got to the top of the hill and
stood there and signaled as it came down. The top of
the hill was twelve hundred to fourteen hundred feet
from the platform. The car was running from thirty-
five to forty miles per hour, and after it had begun to
go down hill the motorman shut off the power and
coasted down hill. He did not see Hoffman until the
car was very near the platform, and he then discov-
ered the old people on the track ahead of him, just
going across, and gave the danger signal after the
front of the car had passed Hoffman. Mr. and Mrs.
Sage were struck and killed, and the car ran some dis-
tance beyond St. Mary's crossing before the motorman
could stop it. The jury were warranted in finding that
Hoffman was signaling the car from the time it
reached the top of the hill, and that the motorman for
some reason did not see him. The track was straight.
It is sought to excuse the motorman because the track
passed through a cut, and it is claimed that the rays
of the headlight were directed straight down the track
and did not reach out at the side. When it is consid-
ered that this car usually stopped at this place on Sun-

day evenings, and that the motorman had a right to expect that some one might be on that platform, signaling to stop, and that Hoffman was there when the car was at least twelve hundred feet east thereof, and was signaling, and that the car had a brilliant headlight, shining ahead, and that the motorman did not discover Hoffman until he was almost opposite him, and did not see the old people crossing the south track, or until they were right in front of him on the north track, the jury might well find from all the evidence that the motorman was negligent in running the car as he did. The principal effort of the defense was to show that Sage must have seen this car coming before he got to the tracks and especially before he got upon the north track, and therefore was guilty of such negligence as precludes recovery. There would be much force in this argument if this was a place where the car did not stop. Sage had often come to this place and alighted there from Libertyville, and again taken the car there to return to Libertyville. So far as the evidence shows, the cars he knew of always did stop there. He knew that Hoffman had gone ahead to signal the car. As he approached the crossing from the south he was in full view of Hoffman standing on the north platform signaling the car. He had every reason to expect that the car would stop before it reached the highway. The fact that the car was in sight would not lead him to fear that it was going across the highway. The power had been shut off a long ways east of this crossing and if that made any difference in the sound of the approaching car he would naturally suppose it was stopping. The jury might well conclude that he could not tell the speed of the car as it came directly towards him. These were questions of fact for the jury, and it was for them to decide whether Sage was in the exercise of due care for his own safety in hurrying over the north track to the platform under

these circumstances. We would not be justified in disturbing their conclusion. As there was evidence tending to show negligence by defendant and due care by deceased, the court properly refused to direct a verdict for defendant. *Libby, McNeill & Libby v. Cook,* 222 Ill. 206.

Complaint is made of the refusal of instructions Nos. 14, 17, 18 and 19, requested by defendant. No. 14 was covered by No. 12, given at defendant's request. No. 17 was to the effect that St. Mary's crossing was not within the limits of any incorporated city and that there was no ordinance or law restricting the speed of the car as it approached the crossing. No ordinance or statute had been referred to in the pleadings and no evidence was offered of any such ordinance or statute, and there was no propriety in giving such an instruction. Moreover, the question of the propriety of the speed of this car at this crossing depended on the facts concerning the duty of the motorman to stop because of the prevailing custom and the signals and the presence of a person on the platform, and these were ignored in the instruction. The eighteenth instruction singled out one particular fact and said that that fact alone and of itself was not any evidence of negligence on the part of the motorman. Instructions of this character have often been disapproved. The reasons therefor are stated in *West Chicago St. R. Co. v. Petters,* 196 Ill. 298; and *Weston v. Teufel,* 213 Ill. 291. See also, *Healea v. Keenan,* 244 Ill. 484, and *Geohegan v. Union Elev. R. Co.,* 266 Ill. 482. The nineteenth instruction was to the effect that if Sage knew the car was coming in time to avoid being struck by it, then it made no difference whether or not the whistle was sounded for St. Mary's crossing. This instruction was properly refused because it ignored the evidence tending to show that Sage had a right to expect that the car would stop before it reached the

crossing. It was also properly refused under *Chicago & A. R. Co. v. Smith,* 180 Ill. 453, where the court said: "Even if he did see the train, we are not prepared to say that the question as to whether the failure to give the signal caused the injury was not one to be submitted to the jury. Under some circumstances, if one approaching a railroad crossing sees a train coming, the ringing of a bill or sounding of a whistle would accomplish no purpose, while under other circumstances such a signal might so arrest the attention and apprise him of the danger as to prevent his attempting to cross the track."

We find no reversible error in the record and the judgment is therefore affirmed.

*Affirmed.*