THE STATE ex rel. IRON MOUNTAIN & SOUTH-ERN RAILWAY COMPANY v. GEORGE D. REY-NOLDS et al., Judges of St. Louis Court of Appeals.

In Banc, December 31, 1920.

1. **CONFLICT IN OPINIONS: Facts Considered: Road Crossing: Con-clusion of Court of Appeals.** Before the record of a court of ap-peals can be quashed upon *certiorari* a conflict of its opinion with decisions of the Supreme Court must appear; and the facts in-corporated in its opinion are all that can be considered. Unless the facts so stated show that the crossing was not a traveled pub-lic road or street, its ruling that the railroad company was guilty of violation of the statute in failing to give warning by bell or whistle as its train approached the crossing, is not in conflict with prior rulings of the Supreme Court. A mere reference in the opinion to the crossing as a "road crossing" and as the "railroad crossing" and a statement that deceased "was killed at the road crossing" and that a witness saw the accident "from a point in the center of the road along which deceased was driving" do not amount to a decision that the crossing was not a "traveled public road or street," and is not a statement of facts showing that it was not a "public road or street," and said decision does not, therefore, in that respect, contravene decisions holding that the statute does not require the railroad company to give warning signals at a mere crossing provided simply for ingress upon or egress from its depot across switch tracks.

2. ———: ———: **Reference to Testimony of Witness: Availability of Whole Testimony.** A reference by the Court of Appeals in its opinion to the testimony of a witness as justifying its conclusion that plaintiff was not guilty of contributory negligence does not make available, upon *certiorari* to that court, the whole of the testimony of said witness upon the point, but only such facts are available to relator as are set out in the opinion. [Distinguish-ing State ex rel. Bush v. Ellison, 221 S. W. 91.]

State ex rel. Iron Mountain Ry. Co. v. Reynolds.

3. ———: **Excuse for Contributory Negligence: Crossing Railroad Track: Seeing and Hearing.** For a long time defendant ran a train for carrying milk into St. Louis, scheduled to stop at the country station at 6:30 a. m., to meet which deceased drove a cart carrying milk cans. The tracks to the south ran through a deep cut, with embankments on both sides, which continued almost up to a crossing, north of the station, on account of which a man driving a wagon from the east, as deceased did, could not see a northbound train more than 150 feet distant until the horses had their feet on the tracks at the crossing. As deceased was driving his wagon across the track at 6:25 a. m. he was struck by a limited fast train, twenty minutes late, which did not stop, but ran by the station at the rate of fifty miles an hour. The morning was very dark and there was a dense fog, and there was evidence that the noise of the train was not heard until within 120 feet of the crossing, and that the headlight could not be seen until it was right at the platform. The milk train did usually stop at the station. The Court of Appeals ruled that "in determining whether deceased was guilty of contributory negligence as a matter of law, the fact that a slow milk train regularly blew its whistle before reaching the station and that it was due to stop at about the time this limited train passed, forms an element in the situation to be reckoned with." *Held*, that the facts stated in the language quoted have no weight to disprove deceased's guilt of contributory negligence, but conflicts with Boyd v. Railroad, 105 Mo. 371, and other cases, because deceased's knowledge of the regular arrival and stopping of the milk train could not have affected his action if he heard no train at all, and if he heard the fast train, though he did not see it, he was guilty of negligence if he entered upon the track without stopping, knowing as he did, that many trains passed over it.

4. ———: ———: **Crossing Signals.** If the evidence shows that the engineer of the train which struck a traveler at a public crossing failed to give the statutory crossing signals, the law casts upon the railroad company the burden of showing that a failure to give the signals did not cause the traveler's injury. Nevertheless, if the traveler's proof conclusively shows that he was struck by his own contributory negligence there can be no recovery for his injuries.

5. ———: **Contributory Negligence: Obstructed View: Approaching Train Neither Seen Nor Heard.** Where the evidence indicates that the traveler could not have seen the approaching train if he had looked, or heard it if he had listened, the Court of Appeals did not contravene prior decisions of the Supreme Court in ruling that he was not to be charged with contributory negligence as a matter of law because he failed to stop and go forward to see whether

the track was clear before attempting to cross; for there is no decision of the Supreme Court in which a ruling in such situation and under the very unusual circumstances of this case, was made, and Baker v. Railroad, 122 Mo. l. c. 544, seems to announce that in the case of an obstructed crossing, the jury is to be allowed to judge of the question of contributory negligence, and there is no decision to the contrary.

6. ———: **Compelled Remittitur By Court of Appeals: Intervention By Plaintiff.** The Supreme Court will not in *certiorari* to the Court of Appeals, upon the intervention of the successful plaintiff in the trial court, rule that the Court of Appeals in requiring him to file a *remittitur* as a condition of affirmance contravened previous decisions of the Supreme Court, where the plaintiff secured the affirmance of the judgment by the Court of Appeals and abided by the enforced *remittitur* in that court. If a judgment is affirmed by the Court of Appeals and a party takes his money under it, he cannot maintain a writ of certiorari to such court.

*Held*, by WOODSON, J., in separate opinion, that upon *certiorari* to an inferior court the Supreme Court becomes possessed of the entire record of the inferior tribunal and acquires jurisdiction of the entire case, and should pass on all errors presented by either side which come within its jurisdiction upon the record.

## *Certiorari.*

WRIT QUASHED IN PART AND SUSTAINED IN PART.

*H. H. Larimore* and *James F. Green* for relator.

(1) In holding that the deceased was not guilty of negligence as a matter of law barring recovery on the part of plaintiff, respondents, have failed to follow the rule announced in the latest controlling decisions of the Supreme Court, as follows: Keele v. Ry. Co., 258 Mo. 62; Burge v. Railroad, 244 Mo. 76; Dyrcz v. Ry. Co., 238 Mo. 33; Bennett v. Railroad Assn., 242 Mo. 125; McGee v. Railroad, 214 Mo. 543; Laun v. Railroad, 216 Mo. 563; Stottler v. Railroad, 204 Mo. 619; Holland v. Railway, 210 Mo. 351; King v. Railroad, 211 Mo. 13; Sanguinette v. Railroad, 196 Mo. 466; Green v. Railroad, 192 Mo. 131; Markowik v. Railroad, 196 Mo. 550;

Ries v. Transit Co., 179 Mo. 1; Kelsay v. Railroad, 129 Mo. 365; Vonbach v. Railroad, 171 Mo. 344; Hook v. Railroad, 162 Mo. 569; Hayden v. Railroad, 124 Mo. 566; Ries v. Railroad, 179 Mo. 1; Lane v. Railroad, 132 Mo. 4; Huggart v. Railroad, 134 Mo. 673; Stepp v. Railroad, 85 Mo. 229; Butts v. Railroad, 98 Mo. 272. (2) Respondents' opinion affirms the case on the theory that the alleged failure of those operating the train in question to give warning by a bell or whistle in approaching the point of accident in violation of Sec. 3140, R. S. 1909, made out a prima-facie case for the plaintiff and relieved the plaintiff of making proof that the failure to give such signals was the proximate cause of the accident. This, without a finding that the point of accident was where defendant's track was crossed by a traveled public road and in the face of a finding by respondents that deceased entered the right-of-way of defendant through a gate in the right-of-way fence. The following decisions by this court announce a different rule: Bauer v. Railway, 69 Mo. 219; Hodges v. Ry. Co., 71 Mo. 50; Parish v. Railroad, 63 Mo. 284. (3) The holding of respondents that the fact that a fast limited train is approaching at about the time a local train is due places upon the traveler approaching a railroad track a different standard of conduct than if such situation did not exist, or that it can be taken in consideration by a court in determining whether such traveler was in the exercise of ordinary care, is in violation of the following previous decisions of this court: Boyd v. Railway, 105 Mo. 371; Moody v. Railroad, 68 Mo. 470; Giardina v. Railroad, 185 Mo. 330; Laun v. Railroad, 216 Mo. 563; Holland v. Railway, 210 Mo. 338; Stottler v. Railroad, 204 Mo. 619.

*Leonard, Sibley & McRoberts* and *Shepard Barclay* for intervenor.

(1) The Court of Appeals ordered a *remittitur* of $3000 as a condition to affirmance of judgment there for

$2000, after which plaintiff made an unsuccessful motion to modify that order as being erroneous. After which (to end the litigation and under such compulsion) and to obtain affirmance in that court, without delay, plaintiff filed the *remittitur* required. But defendant would not have it so. It repudiated the affirmance, and sued out this *certiorari* to reverse the judgment while insisting, meanwhile, on holding on to its benefits and enforceing the enforced *remittitur*, which had been filed only on the theory of final affirmance in that court to end the case at once. Plaintiff solemnly protests against the injustice of such inconsistent positions of relator. If appellant, as relator, is allowed to obtain here a review of the opinion by *certiorari*, and so avoid an affirmance there, and an end of the case which the order for the *remittitur* was intended to attain, the respondents should likewise be permitted to have a review of such parts of the same opinion as come within range of the corrective scope of the same writ. Appellant, having by the force of *supersedeas*, incident to the writ of *certiorari*, prevented for a great many months the operation and effect of the "affirmance" in the Court of Appeals for the lesser sum (ordered upon *remittitur*) and then brought the opinion here for another review on one feature of it only, respondent should be accorded the like privilege of review as to the rest of the learned opinion so brought by appellant into this court, and that part of the opinion requiring of plaintiff a *remittitur* should be subject to the same review. "A party cannot avail himself of such parts of a judgment as are favorable to him and appeal from those parts which are not." Sperry v. Hillman, 13 N. Y. Supp. 271. (2) The pending writ is analogous to appeal in that respect. *Certiorari* should not be allowed to segregate for its scrutiny or revision a slice merely or segment of the opinion which may seem unsatisfactory to appellant. If part comes to this court for review, the whole opinion should be considered, according to recognized principles applicable to this writ. State v. Ellison,

State ex rel. Iron Mountain Ry. Co. v. Reynolds.

273 Mo. 218.  That ruling is neither unusual nor exceptional.  A. recent decision in the highest federal court holds that "the whole case is here on *certiorari*."  Camp v. Greso, 250 U. S. 318.  Another holds that only one such writ is needful to review the same record.  Gompers v. United State, 233 U. S. 604.  (3) Compliance, however, with a judgment is not always a bar to process to revise or reverse it.  Even payment of a money judgment does not prevent an appeal which, if successful, carries an order of restitution to obtain a refund of the payment.  Lumaghi v. Abt, 126 Mo. App. 221; O'Hara v. MacConnell, 93 U. S. 154.  (4) It is accepted law that after a party has properly excepted and objected to a ruling of the court (as plaintiff did here) he may conform (as he necessarily must) to the ruling without thereby waiving his prior objection.  Tobin v. Railroad, 18 S. W. 996; Barker v. Railroad, 126 Mo. 143.

*Shepard Barclay,* of counsel, for respondents.

(1) The opinion of the Court of Appeals fully states the facts in evidence on the issue of contributory negligence, and furnishes the scope and limit of review upon *certiorari.*  State v. Reynolds, 272 Mo. 588; State v. Reynolds, 257 Mo. 19; State v. Dunham, 213 S. W. 459; State v. Reynolds, 213 S. W. 804; State v. Sturgis, 221 S. W. 91.  (2) The ruling in said opinion (223 S. W. 757) as to the issue of contributory negligence, is not in conflict with any decision of the Supreme Court, but in conformity with the latest of those decisions.  Jones v. Railway, 220 S. W. 484; Monroe v. Railway, 219 S. W. 68.  See, as to similar facts Stearns v. Railroad, 75 N. H. 40; Sage v. Johnson, 205 Ill. App. 85.  See as to principles applicable Railroad v. Griffith, 159 U. S. 606; Carter v. Railroad, 193 Mo. App. 223.  (3) The second assignment of error by relator based on the idea that the crossing in question was not found to be "a traveled public road," within the meaning of Sec. 3140, R. S.

286 Mo.—14

1909, is groundless, for the opinion refers to the "road" and the "road-crossing;" and the allegations of the petition and finding thereon indicate that this "crossing" is within the purview of that statute. State v. Wells, 70 Mo. 635; Easley v. Railroad, 113 Mo. 236; Meiners v. City, 130 Mo. 284; 18 Corpus Juris, p. 58; 9 Am. & Eng. Ency. Laws (2 Ed.), 66.

BLAIR, J.—*Certiorari*. The record brought here is that of the St. Louis Court of Appeals in the case of Ludwig Schulz, Admr., v. St. Louis, Iron Mountain & Southern Railway Company, 223 S. W. 757. In this court, Schulz, the administrator, who was plaintiff in the action the record of which is here, asks leave to intervene and move to quash that portion of the opinion and record of the Court of Appeals which ordered him to enter a *remittitur,* on pain of a reversal and remandment of the cause. Relator contends that the Court of Appeals brought its opinion into conflict with controlling decisions of this court in holding that (1) there was negligence on the part of relator; (2) deceased was not guilty of negligence which barred his recovery as a matter of law; and (3) in giving weight to deceased's knowledge that a train other than that which struck him was about due and that it always stopped at the station deceased was approaching when struck. In view of the character of these questions, it is necessary to set out the facts as they are stated by the Court of Appeals. They are as follows:

"The petition charges negligence of the defendant in operating its train, in that it approached the crossing in question without giving the statutory signals. The answer is a general denial and a plea of contributory negligence, which plea was denied by plaintiff's reply.

"The deceased was 24 years of age and unmarried, and left surviving him, besides his father, four brothers and two sisters, ranging in age from 20 to 38 years and all self-supporting. The deceased was employed as

a farm hand at $25 per month, in addition to which he was given his room and board and feed for his horses. The place of his employment was situated about three-quarters of a mile southeast of Munson's Station, which station was maintained by defendant company mainly for the purpose of picking up cans of milk that were shipped from that point by the farmers in the neighborhood to St. Louis. For a long time prior to the date of the accident defendant had a train from the south, known as the 'milk train,' stop at the station at the hour of 6:30 a. m. The deceased usually drove a team hitched to a two-wheel cart, loaded with two or three cans of milk, from the farm to said station each morning in time to make the milk train.

"Defendant's tracks, in approaching Munson's Station from the south, make a curve, and pass under an overhead railroad bridge about a quarter of a mile south of the station, and there the tracks enter into a deep cut. From said bridge, however, up to and beyond Munson's the tracks run in a straight line. There are embankments on either side of the tracks from the said overhead railroad bridge, which continue almost up to the crossing in question. The two platforms of which the station consists lie to the west of the tracks and south of the road crossing, so that the deceased, coming as he did from the east, in order to reach the platform had to drive his team across the tracks toward the west and then turn his team some 25 to 30 feet to the south, to deliver his cans of milk. It appears that the road, some hundred feet before it reaches the railroad crossing, ascends a short steep hill, requiring turning first to the left and then to the right; the hill, according to one of the witnesses, being on an incline of 33 per cent, and the top of the hill ending practically at the railroad's right of way and on a level with the tracks. At a point where the road enters the right of way of the railroad of the defendant company is an unused gate, the distance therefrom to the center of the tracks being approximate-

ly 30 to 40 feet. By reason of the embankment lying to the south of the road and close up to the tracks, a man driving a wagon and approaching the tracks from the east cannot see southward along the tracks a distance of 150 feet until the horses would have their feet on the railroad tracks, and 'then you could see a train for the first time coming from the south.'

"The deceased was killed at about 6:25 o'clock in the morning of December 21, 1914, by a limited fast train of the defendant company at the road crossing at Munson's Station, as the deceased was driving his milk cart across defendant's tracks. . . .

"At the time of the accident it was still 'very dark,' and 'there was a very dense fog that morning.' And according to one of the witnesses who was in a position more favorable than the deceased, the noise of the approaching train was not heard until the locomotive thereof was within 120 feet of the crossing. The train was some 20 minutes late and was trying to make up time, and passed Munson's Station at about 50 miles per hour. The only witness for plaintiff who saw the accident and 'had a good unobstructed view' from the point in the center of the said road along which the deceased was driving his team, and who stood at a point about 75 yards west of the crossing, testified that he did not see the headlight of the locomotive until 'right after it got close to the platform and not before,' and when the heads of the horses were 'about six or seven feet' from the tracks. And because of the high embankments on either side of defendant's tracks to the south for at least a quarter of a mile, the rays of the headlight of the locomotive were kept within the scope of the railroad right-of-way cut, and even the engineer of the locomotive, who was a witness for defendant, testified that he did not see the 'team and rig' until his engine was within 100 feet of them.

"The passenger train which caused the injury was a fast 'limited' train which was behind time, and passed

Munson's Station within a few minutes of the time of the scheduled stop at such station of what we have above referred to as a milk train.

"In determining the question of whether deceased was guilty of contributory negligence as a matter of law, the fact that the slow milk train regularly blew its whistle before reaching Munson's Station, and that it was due to stop at about the time this limited train passed, forms an element in the situation to be reckoned with, and when taken in connection with the facts that the road crossing at this point is highly dangerous, not affording the driver of a team a view to 150 feet to the south until his horses' front feet are actually upon the railroad tracks, that on the occasion in question the noise of the train was not heard until it was within 120 feet of the platform, that the rays of the electric headlight of the train were not visible until 'right after it got close to the platform and not before,' the night being very dark and a dense fog prevailing, that the train in question was a 'limited' running at the rate of 50 miles an hour, and failed to give the statutory signals at so dangerous a crossing at a time when a slow milk train was due to stop at that very point—we are unwilling to conclude that the deceased was guilty of contributory negligence as a matter of law."

Upon these facts the court held (1) "defendant was negligent in failing to give any warning by bell or whistle in approaching this crossing, and, therefore, in light of Section 3140, Revised Statutes 1909, plaintiff made out a prima-facie case . . . ; the statute supplying the causal connection" between this negligence and the injury; (2) that deceased was not guilty of contributory negligence as a matter of law; and (3) that, under other facts stated, a *remittitur* should be ordered to reduce the recovery to $2,000.

I. Relator contends the ruling that Section 3140, Revised Statutes 1909, applied to the crossing in question conflicts with decisions of this court. It is urged the

crossing is not a "traveled public road or street." The decisions relied on are Bauer v. Railway, 69 Mo. 219; Hodges v. Railway, 71 Mo. 50; and Parish v. Railway, 63 Mo. 284. The Bauer and Hodges cases hold that a way provided by a railway company for ingress to and egress from its depot across switch tracks is not a "traveled public road or street" within the meaning of Section 3140. The cases are relied upon to show this court has. ruled the statute is inapplicable except where the railroad crosses such a "*traveled* public road or street." The essence of relator's present contention, therefore, is that the Court of Appeals has ruled contrary to these decisions, i. e. has ruled the statute applies to crossings other than those at which a railroad crosses a "traveled public road or street." If the court so ruled, its ruling conflicts with the cases cited. From the portions of the opinion set out above it appears the only negligence alleged was the failure to give statutory signals for the crossing; that the Court of Appeals referred to the crossing as a "road crossing", and as the "railroad crossing;" states "deceased was killed . . . at the road crossing at Munson's Station;" says that one witness saw the accident "from a point in the center of said road along which deceased was driving his team and . . . stood at a point seventy-five yards west of the crossing," and states deceased approached the crossing along this road from the east; these two facts last referred to include a necessary implication that the road deceased was traveling crossed the track and right of way and extended for some distance in each direction therefrom. The failure to give the statutory signals was, apparently, the only negligence alleged. The court applied the statute to the crossing and mentions no other negligence as either pleaded or shown against relator. After the opinion was handed down, relator filed an able and earnest motion for rehearing, which is now before us as a part of the record in this proceeding. This motion expressly

*Road Crossing.*

refers to the ruling of the court "upon the failure of appellant to give the statutory signals required from engines approaching a public crossing," but does not question its soundness. It alluded to the "traveler upon the highway using such crossing" and to the "crossing" in a way much as the court has done. It conceded, properly, that the court "detailed fully the alleged negligence of defendant in failing to give statutory signals," but contains no suggestion of the point now made. We do not mean to be understood as holding that if the Court of Appeals had stated facts showing this crossing was not a "traveled public road or street" a ruling on such facts applying the statute to them would, as against such a statement, have raised an implication the cross-ing was within the statute. That is not the question here. That question is whether the ruling made conflicts with decisions holding the statute does not apply except at the crossings of a "traveled public road or street," i. e. did the court rule the statute applies to a crossing which is not the crossing of a "traveled public road or street"? It is true the opinion does not expressly show the crossing was such as the statute describes. On the other hand, it certainly does not show it was not such a crossing. Read in the light of the motion for rehearing it would seem there was either no issue of the kind or the verdict had settled it, as it might. [Easley v. Railway, 113 Mo. 236.] On *certorari* in this sort of proceeding it is the conflict of the opinion of the Court of Appeals with decisions of this court which must appear before the record can be quashed. [State ex rel. McNulty v. Ellison, 278 Mo. l. c. 47.] This is the view of the majority of this court. The facts incorporated in the opinion, directly or by reference, are all the facts this court can consider. [State ex rel. Bush v. Sturgis, 281 Mo. 598, 221 S. W. 91.] Unless such facts in this case show the crossing was not a traveled public road crossing, the record of the Court of Appeals cannot be quashed for conflict with the cases cited. That they do not show

this seems plain. Counsel would hardly think of citing this opinion of the Court of Appeals in support of a contention that the statute extended to a crossing not that of a traveled public road or street. It would not support it.

It is argued Section 3140 is essentially penal and must be strictly construed (Parish v. Railway, 63 Mo. 284), and a decision (State v. Railway, 19 Mo. App. l. c. 106) is cited in which a judgment for the statutory penalty was reversed and the cause remanded on a holding that evidence "of a road crossing east of the depot" and of "a crossing near the east end of the depot platform" might be admitted to be true and yet not show a crossing within the statute. The question in that case is unlike that here. That question was whether the *evidence* tended to show a statutory crossing. The question here is whether the facts stated in the opinion show the crossing was not within the statute. We are of opinion the record ought not to be quashed for conflict on this point.

II. Did the Court of Appeals bring its opinion into conflict with controlling decisions of this court when it ruled deceased was not guilty of such negligence as would bar this action?

(1) In presenting this point relator asks us to consider testimony not set out in the opinion. Relator concedes the general rule that in a proceeding **Facts Considered.** like this the court will "not go beyond the opinion to ascertain the facts" (State ex rel. v. Ellison, 273 Mo. 218; State ex rel. v. Ellison, 278 Mo. l. c. 47), but calls attention to the fact that the Court of Appeals specifically referred to the testimony of a witness who stood in the road west of the crossing, and then argues that this brings the testimony of that witness within the rule in State ex rel. Bush v. Sturgis, 281 Mo. 598, and makes available his whole testimony in ascertaining the facts upon which the court based the

ruling here in question. The court did not "refer" to the testimony of the witness in the sense that it referred a reader of its opinion to the record of the testimony of the witness for facts other than those it stated in the opinion. It referred to it in the sense that it stated facts to which the witness testified and quoted from his testimony. The reference in the cited case was to a writing or document and was held to incorporate it. The rule in the case cited has never been applied to authorize the consideration in this court, on *certiorari*, of testimony of witnesses upon which a court of appeals founds its statement of facts any further than such testimony appears in the opinion. Whether such testimony would be here for consideration if a reference to it as the basis of a ruling was made, without any statement of the facts it tended to prove, is not presented in this case. To apply the rule in State ex rel. Bush v. Sturgis, supra, to the situation here would be to convert it from an exception to the general rule first stated into a complete negation of it. The point is ruled accordingly.

(2) It is next argued the Court of Appeals ruled in conflict with designated decisions of this court in holding that: "In determining the question of whether deceased was guilty of contributory negligence as a mat-

Wrong Conclusion: ter of law, the fact that a slow milk
From Facts. train regularly blew its whistle before reaching Munson's Station and that it was due to stop at about the time this limited train passed, forms an element in the situation to be reckoned with." The sentence, considered as a whole, quite clearly shows the court was giving the fact stated in the quoted clause some weight as evidence tending, in connection with other parts it set out, to disprove deceased's guilt of contributory negligence. Relator contends it has no weight for that purpose, and that the contrary ruling is in conflict with the decisions in Boyd v. Railway, 105 Mo. 371; Moody v. Railroad, 68 Mo. 470; Giardina v. Railroad, 185 Mo. 330; Laun v. Railroad, 216 Mo. 563; Holland v. Railway, 210 Mo. 338; Stotler v. Railroad, 204 Mo. 619.

218    SUPREME COURT OF MISSOURI.

State ex rel. Iron Mountain Ry. Co. v. Reynolds.

From Boyd's hotel in Renick a walk, long used by the public, led across the tracks to the Wabash Depot. Boyd met all passenger trains. On September 26, 1887, a train was due which usually crossed the walk in question at a rate of three or four miles per hour and stopped at the depot. On this date an excursion train, running on the time of the regular train, approached from the west, did not check its speed and passed the depot at the rate of 45 miles per hour. Boyd heard this train whistle, came out of the hotel and proceeded down the walk to the depot in a run or "trot" and, without changing his gait, went upon the track immediately in front of the engine and was struck and killed. He was in possession of all his faculties. The court stated the train was in plain view and its sound in Boyd's hearing from the moment he left the hotel; he both heard and saw the train "in a general way" but did not stop to ascertain its rate of movement or whether it was the regular train due, with whose speed at the crossing he was familiar; he seems to have acted upon his first impression. The court held the engineer had a right to presume Boyd would not attempt to cross in front of the train and that there was no time to act to save him after he entered the danger zone.

That case differs from this in that Boyd saw the train and yet risked and lost his life by acting upon his first impression, which was that the approaching train was the regular train then due, which always slowed down for the depot and stopped there. It was held it was Boyd's "duty to look and listen if he could see or hear the train, for the purpose of avoiding injury by it, and if at any time he might have stopped his progress and avoided injury, then he was guilty of contributory negligence."

In the case at bar the Court of Appeals states facts which would have justified a finding that Schulz could not have seen or heard the train which killed him until it was almost upon him and until too late for him to save himself. The particular part of the opinion under

Vol. 286]          OCTOBER TERM, 1920.          219

State ex rel. Iron Mountain Ry. Co. v. Reynolds.

consideration, however, does not seem to proceed upon this theory. It does not occur to us just how deceased's knowledge of the regular arrival and stopping of the milk train could have affected him if he heard no train at all. Unless he heard *some* train it is difficult to understand in what way his knowledge that the milk train slowed down and stopped at Munson's Station could have influenced his action. The railroad at this point is a main line and, of course, deceased knew many trains other that the milk train passed over it. If he heard this train it was not also necessary for him to see it in order for him to be advised of its approach. If after hearing it he went upon the track in front of it in the dark and fog without any effort to ascertain what train it was or where it was with relation to the crossing, it would seem to follow that he negligently staked his life upon its being the milk train, due five minutes later, and upon its stopping at the depot, and lost. If he did not hear the train, his knowledge of the milk train's custom to stop is irrelevant. We think the ruling comes within the rule of the cases cited and the portion of the opinion objected to should be quashed. An examination of the cases cited in support of the ruling leads to the conclusion they are inapplicable.

. In French v. Railroad, 230 Mass. 163, it was shown that two trains were due to arrive at the same time at Weston; the one from the east customarily arrived first, took the siding across the main track from the depot, and discharged and took on mail, express matter and passengers; the custom of the east-bound train was to stop 375 feet west of the station and wait there until this had been done; plaintiff for thirty years had handled the mail off the west-bound train as a mail carrier from the station to the post office; on the day of the accident the west-bound train arrived first, as usual, took the siding, and plaintiff loaded mail pouches upon a wheelbarrow; he then looked westward and, the train from the west not being in sight, started along the main track

eastward, walked fifteen or twenty feet with his back to the west and turned to cross the main track; some one shouted, he turned and saw the train from the west about ten feet away; it struck the wheelbarrow and injured plaintiff; it was running thirty miles per hour. It was held plaintiff was entitled to rely "to a certain extent upon" the existing practice of which he knew— that the east-bound train stopped and waited west of the station until the west-bound train had discharged its mail, express matter and passengers. The facts of that case distinguish it from this. There, the disregard of a custom with respect to the operation of the train which struck French was held relevant. This case would more resemble that if the milk train had run past the station at a high rate of speed in violation of custom and schedule and had struck deceased.

In Brott v. Electric Railroad, 220 N. Y. 92, a woman was killed as she was stepping from a track she was crossing to gain a platform at which cars stopped on signal and from which she desired to enter the car which struck her. There was a shelter or station on the north of double tracks and it was necessary to cross the tracks to gain the platform on the south of the tracks at which the east-bound cars stopped. Deceased carried a suit case and it was held her appearance and the fact she carried a suit case as she went from the shelter across the tracks to the south platform were evidence she desired to become a passenger. No particular signal was necessary to stop the car. It was held she had "a right to assume the motorman would see her and know she desired to become a passenger;" that defendant owed her a duty of care to ascertain if she desired to become a passenger, and a like duty because she "was such intending passenger." There was a high wind and snow was being driven by it. It was held the question of contributory negligence was for the jury. The case of Sage v. Johnson, 205 Ill. App. 85, is of like character. It is apparent these decisions do not apply to the facts before the Court of Appeals in this case.

In Stearns v. Railroad, 75 N. H. 40, it was held that the question of contributory negligence was for the jury on evidence tending to prove the deceased would have crossed the railroad track in safety but for the fact the train was running at twice the speed permitted by rules, and to warrant the inference deceased drove upon the track in a reasonable belief that the train was moving at the customary speed, with which he was familiar. Neither this decision, nor others cited to the point, apply to the facts of the case.

(3) If the evidence shows the enginemen failed to give the statutory crossing signals, the law then casts upon defendant the burden to show the failure to give the signals did not cause the injury. Nevertheless, if plaintiff's proof conclusively shows deceased was struck by reason of his own contributory negligence, he cannot maintain this action. [McGee v. Railroad, 214 Mo. l. c. 544, et seq.; Holland v. Railroad, 210 Mo. l. c. 350, 351; King v. Railroad, 211 Mo. 13, 14.] The question before the Court of Appeals then was whether the proof conclusively showed deceased was guilty of such negligence as would bar his recovery. The question before us is whether that court's ruling that the facts it stated did not show contributory negligence as a matter of law conflicts with controlling decisions of this court. Relator alleges conflict with numerous decisions. One group, like the case of Burge v. Railroad, 244 Mo. l. c. 94, holds that one who goes upon a track from a place of safety and is struck by a train whose rapid approach he saw or should have seen long before he went upon the track, is guilty of contributory negligence as a matter of law. Others, like Bennett v. Railroad, 242 Mo. 125, are cases in which one suddenly steps in front of a moving engine or car and is injured, and reliance is placed upon the humanitarian doctrine. Other cases deal with accidents at crossings partially obstructed, but at which there was a space in safe territory from which the person injured

*Contributory Negligence.*

or killed must have seen the approaching train if he looked and is thereby conclusively shown to have failed to do so or to have seen and failed to heed.

We do not find in the list of cases cited one which deals with a state of facts like that presented by the opinion before us. Those cases state the general rules of law in crossing cases, but in none of them was there occasion to deal with a situation like that before the Court of Appeals. The facts of the opinion show there was evidence tending to prove the railroad runs through a deep cut almost to the crossing; that the train could not have been seen by deceased had he stopped; that it was dark and there was a fog which, with the embankments, prevented deceased from seeing the rays of the headlight; that the noise of the train could not have been heard until the train was within one hundred and twenty feet of the platform; that the train could not have been seen by deceased until it reached about the same point; that his horses would then have been stepping on the track; that the train would cover the intervening distance in two seconds. There is no direct evidence on the question whether deceased listened. The evidence does indicate he could not have heard if he had listened at a time when he was not entering upon the track. The evidence indicates he could not have seen, had he looked, in time. The signals were not given, according to the jury's finding. On the facts in the opinion the question seems to become one whether deceased was guilty of contributory negligence as a matter of law by reason of his failure to stop and go forward to see whether the track was clear. We are cited to no case in this court which holds this to be a duty in all cases—or in any case where the situation resembles that here. The case is more like Petty v. Railroad, 88 Mo. 306, in which it was held that in case of an obstructed crossing the question we have mentioned was for the jury. A like holding is found in Baker v. Railway, 122 Mo. l. c. 544. In Hook v. Railway, 162 Mo. 569 et seq., it will be found this court divided

evenly upon this question, one judge expressing no direct opinion upon it. In Baker v. Railroad, supra, is found what seems to be an application of a rule that in the case of an obstructed crossing the jury is to be allowed to judge of the question of contributory negligence. We are cited to no case in this court which, upon the facts resembling those before us, holds the contrary.

III. Schulz, Administrator, plaintiff in the case before the Court of Appeals, contends the ruling of that court in requiring a *remittitur* on pain of a remandment of the cause conflicts with decisions of this court. This suggestion by the party other than the one who sued out the writ is receivable under State ex rel. v. Ellison, 273 Mo. l. c. 228, 229. The fact that Schulz has accepted the ruling, and complied with it, and has thereby secured an affirmance of the judgment which he otherwise could not have secured, lends interest to this phase of the case. Relator is of the opinion that in respect to the ruling on the *remittitur* it has been accepted and is at an end in so far as the movent Schulz is concerned. Even if it be conceded the ruling as it stands conflicts with decisions of this court, it is difficult to see how a quashing of that ruling could aid Schulz after he has accepted the ruling and invoked affirmative action upon it. If he is actuated solely by a desire to aid in securing uniformity of decisions, it is pertinent to inquire whether such a suggestion can be made by one not directly interested in the result of it; and, if so, whether such suggestions are confined to the parties and within what time they must be made. If an opinion remands a cause, both parties have a direct interest in the correctness of the rules of law it lays down; but if a judgment is affirmed and a party takes his money under it, can he then appear here and sue out a writ of *certiorari?* If so, he can follow and correct the opinion after it has served its full purpose in the case and the litigation is ended. In view of the fact that a contrary ruling would open the way

*Remittitur.*

for the writ to be employed as a sort of method of attempting to revamp opinions of the courts of appeal after the cases in which they were written were ended and gone, we hold that when Schulz performed the condition imposed, filed his *remittitur* and accepted his judgment he no longer had standing to attack the opinion, and that this court, in such circumstances, is not called upon to act on its own motion.

IV. The result is that the part of the opinion considered under " (2) " in Paragraph II, supra, is quashed, and the writ in all other respects quashed. *Williams, Graves, Goode* and *Williamson, JJ.* concur; *Woodson, J.,* concurs in separate opinion; *Walker, C. J.,* concurs except in subparagraph "2" of Paragraph II, from which he dissents.

WOODSON, J. (concurring).—While I concur in the result of the majority opinion, yet I want it distinctly understood that, in my opinion, a writ of *certiorari* issued by this court, or any superior court, to an inferior one, directing it to send up the record in any designated case for review, refers to the entire record, and it then becomes the duty of that court to send up the entire record of the case, and after that is done, the superior court acquires jurisdiction of the entire case, and may and should pass upon any and all errors presented by counsel for either side appearing from the record falling within the jurisdiction of the superior court. I also want it understood that if such an error appears anywhere in the record sent up, that fact cannot and should not be suppressed or obliterated by any action whatever taken in the case by the inferior court.