STATE OF MISSOURI at the relation of BRAXTON GENTRY and SALLIE GENTRY, His Wife, Relators, v. JEFFERSON D. HOSTETTER, WILLIAM DEE BECKER and EDWARD J. McCULLEN, Judges of the St. Louis Court of Appeals.—125 S. W. (2d) 72.

Division Two, February 21, 1939.

*Rodgers, Buffington & Adams* for relators.

*Don C. Carter* for respondents.

ELLISON, J.—Certiorari bringing up the record of the St. Louis Court of Appeals in Robinson v. Gentry et ux., opinion reported in 106 S. W. (2d) 913. The question presented is whether under our decisions, when the payee of a mortgage note indorses it to an agent *for collection* after maturity, and the agent *sells* the note to a third party who pays the amount due thereon, that amount being promptly remitted by the agent to the payee and accepted by it in full settlement, and the maker thereafter recognizes the purchaser as the owner and pays the interest to him—under these facts does the purchaser acquire such title to the note as will entitle him to collect it from the maker by foreclosure, notwithstanding the restrictive endorsement to the agent? The respondent judges of the St. Louis Court of Appeals held the title did pass. The relator-makers contend that holding contravened certain decisions of this court.

The facts are fully stated in the reported opinion of the Court of Appeals. We must review them here, condensed as much as clarity will permit. On February 5, 1923, the relators, Gentry and wife, negotiated a loan of $3000 due in one year, secured by deed of trust

with power of sale on their 140-acre farm in Audrain County, from the Mechanics Savings Bank of Moberly, Missouri, through its agent D. G. Spelman, president of the Bank of Sturgeon. The Moberly bank carried the loan for four years and then sent it back to the Sturgeon bank for collection, restrictively indorsing the note as follows: "Pay to the order of Bank of Sturgeon for collection without recourse for release." The collecting bank sold the loan on February 25, 1927 to the plaintiff below, Robinson, and indorsed the note: "For value received we assign the within note to W. A. Robinson without recourse to us. Bank of Sturgeon by D. G. Spelman, President." On the same day, Robinson paid the Sturgeon bank the face of the note, $3000, the Gentrys paid up the interest, and the Sturgeon bank remitted the full amount of both to the payee, the Mechanics Savings Bank of Moberly, which noted the payment of the note on its records and closed the account.

For seven years thereafter the Gentrys paid the interest on the note to Robinson, but defaulted in the payment of the interest due February 5, 1935, and also in the payment of the taxes for 1933 and 1934 on the land covered by the deed of trust, all in violation of the terms of the latter. In taking steps to foreclose Robinson discovered that the deed of trust omitted a specification of the place at which the foreclosure sale should be held. He then brought the suit below in the circuit court of Audrain County in two counts, the first in equity to reform the deed of trust by inserting words providing the sale should take place at the "Courthouse Door in Mexico, Audrain County, Missouri;" and the second count praying a statutory foreclosure under Section 3060, Revised Statutes 1929 (Mo. Stat. Ann., p. 1890).

By their verified answer the Gentrys admitted they were the owners of the land and the makers of the note and deed of trust, but denied the other allegations of the petition. The circuit court rendered judgment for the defendant Gentrys on both counts of the petition, finding Robinson was not the owner of the note sued on. On appeal the respondent judges of the St. Louis Court of Appeals reversed that judgment and remanded the cause with directions to the circuit court to enter a decree for plaintiff Robinson reforming the deed of trust as prayed, and to proceed to a trial of the issues under count two of the petition praying a statutory foreclosure. At the instance of the Gentrys this court then issued its writ of certiorari.

The opinion of the respondent judges states that at the trial of the cause in the circuit court the evidence showed without dispute Robinson was continuously in possession of the note and deed of trust from the date of his purchase on February 25, 1927, until the cause was tried at least eight years later. At no time during that period did the Gentrys dispute his ownership. Mr. Gentry testified he thought the note was all right and "didn't know there was

any argument about it;" that he quit paying interest to the Moberly bank in 1927 and thereafter paid it to Robinson up to 1934 because he believed the latter was the owner of the note, Mr. Spelman having informed him that it had been turned over to Robinson. He was first advised to the contrary, on the matter of Robinson's ownership, by his own counsel after the suit was filed. Gentry further admitted he had not paid the $3000 principal of the note to anyone and that he did not know to whom he was indebted thereon.

At the trial the Moberly bank disclaimed ownership of the note. The Bank of Sturgeon made no claim to it, and, in fact, had been closed and in process of liquidation since 1930, some five years or more before the trial. In short, the relator, Gentry and wife, admitted they owed the note and no one made claim to it except Robinson, who had bought and paid for it, had possession of it, and whose ownership the Gentrys had recognized for eight years. But they did not know about the restrictive indorsement put on the note by the Moberly bank when it was sent to the Bank of Sturgeon for collection. And there is nothing in the opinion showing the Moberly bank knew when it received the funds remitted to it that the note had been sold to Robinson instead of paid by the Gentrys.

█ Relators assert the holding of the respondent judges of the St. Louis Court of Appeals contravenes the following decisions of this court: National City Bank of St. Louis v. Macon Creamery Co., 329 Mo. 639, 650, 46 S. W. (2d) 127, 131; Jackson v. Johnson, 248 Mo. 680, 689, 699-701, 154 S. W. 759, 761, 764-5; Northwestern National Bank of Chicago v. Bank of Commerce of Kansas City, 107 Mo. 402, 410, 17 S. W. 982, 983; Powell v. Bowen, 279 Mo. 280, 296, 214 S. W. 142, 147.

The National City Bank case holds: "While ordinarily a restrictive indorsement for collection does not carry title to the paper 'yet when such indorsement is made in pursuance of an understanding and of dealings between the parties, whereby the check is taken, credited and treated as a cash deposit subject to check, the ordinary rule does not obtain.' . . ." Relators say this states the *only* exception to the general rule that a restrictive indorsement for collection destroys negotiability and prevents a sale of the note by the indorsee. But the case does not so hold.

Relators further contend the Jackson case is parallel to the one at bar in all essential respects. There, the Scott County Bank owned a note which it endorsed "for collection" to a second bank. The latter forwarded the note to a third bank. One J. W. Spies testified ambiguously that he "took it up," that he "paid it," and that he "bought it" at the third bank, to protect himself. At any rate he paid the amount due on it, which was transmitted to the Scott County Bank and the latter treated the note as paid. Thereafter Spies

attempted to foreclose the deed of trust securing the note and this court held he could not do so because the restrictive indorsement for collection by which the note was transferred to the second bank, did not authorize a sale thereof.

But the Jackson case is unlike the one before us in several important respects. The testimony of Spies was equivocal as to whether he bought the note or paid for it. The opinion implies he acted in bad faith. He was not a stranger to the note, because he claimed to own the land encumbered by the deed of trust which secured it. And finally there was no evidence in the Jackson case, as there is here, that the makers of the note, or those bound by it, had recognized his title and paid the interest to him for years, or that the owner thereof acquiesced in the sale. In that connection it is to be remembered the indorsement in this case was "for collection *without recourse* for release." (Italics ours.) There is good reason for saying the italicized words were inserted to authorize a *sale* of the note without recourse if the amount due could be realized that way, though the respondent judges of the St. Louis Court of Appeals do not make that point in their opinion. However they do treat this Jackson case as announcing merely a general rule subject to exceptions.

The Northwestern National Bank case first states a certain other "general rule" relating to bills of exchange or drafts, and then goes on to say, immediately following: "It is also well settled that an indorsement of a draft for collection limits the effect which would have been given to a general or blank indorsement, and warns parties dealing with it, that there is no intent to transfer the ownership or proceeds of the draft." But there is nothing in the decision, so far as we can see, holding that this rule admits of no exception. The last case cited, Powell v. Bowen, supra, merely holds that established rules of law will be enforced though great hardship results. It does not deal with the transfer of commercial paper and bears no resemblance to the case below.

■ Relators complain that the respondents' opinion makes no effort to distinguish the Jackson case on its facts, but after citing it merely declares: "There are, however, exceptions to the above-stated general rule and we believe the facts in this case (meaning the Robinson-Gentry case below) bring it within one of the exceptions," —without stating what the exception is. We certainly do not agree to this. Directly following the sentence just quoted, the opinion proceeds to review three cases decided by the Courts of Appeals and Swope v. Leffingwell, 72 Mo. 348, all as stating exceptions to the general rule.

The case stressed by respondents is Cantrell v. Davidson, 180 Mo. App. 410, 168 S. W. 271, where a note payable to a state bank was

transferred and endorsed to the plaintiff Cantrell, who sued the maker. The maker defended on the ground that the transfer had not been authorized by a formal resolution of the board of directors of the bank as the statute requires, and that the plaintiff therefore acquired no title upon which to base his suit. In that respect the Cantrell case differs from the instant case, for here plaintiff's infirmity of title is attributed to the restrictive indorsement "for collection." But the respondent judges ruled this made no difference in principle and quoted the following from the Cantrell case:

"It is not perceived how defendant is in any position to complain because no formal resolution was passed. He admits execution of the note, and the jury says he still owes it. The bank makes no claim to the note; in fact, it is clearly shown that, as between it and plaintiff, the latter's ownership is admitted and unquestioned. The only interest defendant can have in the matter is to see that he is in no danger of having to pay the note twice. . . . The payment by Cantrell to the bank of the money on the note could not be construed as a payment and extinguishment thereof. Cantrell was not a party, but a stranger to the note. When a stranger pays his money for a note and 'takes it up,' the presumption is that he has bought it, and not that he has paid it off, and, when Cantrell 'took up' the note and paid his money therefor intending to obtain and hold the note as his, he became a purchaser of the note, and it was not paid off or extinguished." . (Citing cases.)

In other words, respondents' opinion held the rule announced in the paragraph just quoted was an exception to the general rule that the indorsement of a note "for collection" passes no title to the indorsee. We know of no reason why respondents could not write this exception into the law, since the facts in our Jackson case, on which relators rely, were different from those in the Robinson-Gentry case below in several important respects, and we have never held contrary to respondents' ruling, on similar facts. [State ex rel. Wabash Ry. Co. v. Ellison (Mo., banc), 204 S. W. 396; State ex rel. St. L., I. M. & S. Ry. Co. v. Reynolds, 286 Mo. 204, 222, 226 S. W. 564, 569; State ex rel. American Press v. Allen (Mo., Div. 2), 256 S. W. 1049, 1051-2.]

Another assignment in relator's brief is that the ruling in respondents' opinion is in conflict with Section 2665, Revised Statutes 1929 (Mo. Stat. Ann., p. 665). That section in our negotiable instrument law provides that a restrictive indorsement confers upon the indorsee the right "(3) to transfer his rights as such indorsee where the form of the indorsement authorizes him to do so." Relators' contention is, of course, that a restrictive indorsement "for collection" does not authorize the indorsee to transfer the endorsed instrument by sale. This point is not entitled to consideration because

1096

it raises only a question of error in the opinion and not a question of *conflict* with our decisions, with which latter alone we are here concerned. But as showing the real point involved in the opinion we may say this. The negotiable instrument law deals with *negotiable* instruments. ▮ The Uniform Negotiable Instruments Act, which is in force in this State, does not prevent the transfer of a negotiable or non-negotiable instrument by *assignment*. [8 Am. Jur., sec. 301, p. 39; 10 C. J. S., sec. 28, p. 437, sec. 223, p. 716.] The note involved in this case was not negotiable, irrespective of the restrictive indorsement, ''for collection,'' because it was transferred after maturity. The question in the case is whether Robinson acquired title to the note and deed of trust by valid assignment under the facts.

For the reasons stated, our writ of certiorari is quashed. All concur.