Margaret CHANDLER, Respondent,

v.

Harry HOWARD, Trustee, A. F. Stephens, Grace M. Stephens, Jay L. Oldham and Joe Rutlader, Appellants.

No. 46188.

Supreme Court of Missouri, Division No. 2.

March 10, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied April 14, 1958.

Carroll W. Berry and George C. Berry, Kansas City, for appellants A. F. Stephens, Grace M. Stephens and Joe Rutlader.

Harry Howard, Kansas City, trustee, pro se.

Jay L. Oldham, Kansas City, pro se.

Stanley J. Siegel, Kansas City, for respondent.

STOCKARD, Commissioner.

The petition of plaintiff, respondent here, was in two counts. By the first count, which was in equity and in which all the appellants here were named as defendants, respondent sought to have a note in the amount of $900 canceled, the deed of trust securing the note released of record, and a foreclosure sale of her real estate made pursuant to said deed of trust declared void and of no effect. The second count, which was directed only against Jay L. Oldham as defendant, stated an action at law for conspiracy and false representations, and by this count respondent sought both actual and punitive damages. Appellants A. F. Stephens and Rutlader each filed separate counterclaims against respondent for unlawful detainer and Stephens also included a claim for malicious prosecution. No request was made by any party for a jury trial as to any issue, and no objection was made to the trial of all the issues by the trial judge sitting without a jury.

The trial court entered judgment dismissing Stephens' counterclaim on its merits. We find no specific disposition of Rutlader's counterclaim, but no complaint of this is made on this appeal, and anything but dismissal would be inconsistent with the judgment entered. As to count I of the petition, the judgment was that (1) the foreclosure and sale of respondent's property was void and of no effect, (2) fee simple title to the property revest in respondent, and (3) the $900 note be canceled and the deed of trust securing it be released and satisfied of record. As to count II, the judgment was that respondent recover from Jay L. Oldham $1,000 actual and $1,000 punitive damages. It was further provided that respondent's judgment for costs be only against Jay L. Oldham and A. F. Stephens.

All the defendants appealed from the judgment. Appellants A. F. Stephens, Grace M. Stephens and Joe Rutlader have filed a brief, which we shall refer to as the Stephens brief, and appellants Harry Howard and Jay L. Oldham have each filed separate briefs.

It is our duty to review this non-jury case upon both the law and the evi-

dence. In doing so we must make our own independent findings of fact and reach our own conclusions as to the weight of evidence. However, in doing this we give due regard to the opportunity of the trial judge to judge the credibility of the witnesses. Minor v. Lillard, Mo.Sup., 289 S.W.2d 1.

Respondent was the owner of a rooming house located at 420 West 32nd Street, Kansas City, Missouri. On September 15, 1954, she borrowed $2,000 from appellant A. F. Stephens and executed two promissory notes, one in the amount of $900 payable to Grace M. Stephens (wife of A. F. Stephens) and secured by a first deed of trust, and the other in the amount of $1,100 payable to A. F. Stephens and secured by a second deed of trust. Appellant Harry Howard was named as trustee in each deed of trust. In March 1955, A. F. Stephens caused foreclosure proceedings to be instituted on the deed of trust securing the $1,100 note. In connection with this matter, respondent employed Jay L. Oldham as her attorney to represent her and to attempt to arrange a redemption of her property. At the foreclosure sale the property was bid in by A. F. Stephens. In his capacity as attorney for respondent, Oldham investigated the circumstances surrounding the foreclosure, and he prepared and served on behalf of respondent a notice of redemption.

Apparently some difficulty was encountered by respondent in obtaining a redemption bond, and Oldham suggested that Stephens might be willing to receive the amount due on the note and release the property. According to Oldham, respondent did not ask and he did not tell her where the money was to be obtained to pay Stephens; he just told her that he would "procure the money." On March 15, 1955, respondent went to Oldham's office, and at his request she executed a note payable to Oldham's daughter, Marthal Longabach, in the amount of $2,355.42 which was to become due one year from date. We are not able to determine from the record when respondent first learned that Oldham intended to loan her the money represented by this note, and we cannot determine with certainty that she knew it at the time she signed this note, although presumably she did. The amount of $2,355.42 equalled the total of the $1,100 and $900 notes, the accrued interest thereon, and the expenses of the foreclosure proceedings. At this time respondent also executed another note payable to Marthal Longabach in the amount of $750 to be paid in monthly installments. This second note was in payment of the attorney fees of Oldham for handling this entire matter. Both notes were secured by separate deeds of trust on respondent's property.

The next day, at a meeting in Howard's office, Oldham gave Stephens the necessary money, and received from him the $1,100 and $900 notes. Oldham and Stephens then had the deed of trust securing the $1,100 note released and satisfied of record, but unknown to respondent they did not release the deed of trust securing the $900 note. This note was retained personally by Oldham. On this appeal he contends that by the above transactions he, as a "stranger," purchased this $900 note with his money to hold as "additional security" for the $2,355.42 note made payable to his daughter.

Respondent had contracted for some repair work to be done on her property which was completed in January 1955, but a dispute arose concerning the quality of the work and she refused to pay the contractor until the work was properly done. A notice of a mechanics' lien was filed on March 16, 1955, and suit to enforce this lien was filed in April. Respondent employed Oldham as her attorney to represent her in this matter, and in May 1955 he filed an answer on her behalf. At the time of the trial of this case, he was still her attorney of record.

Respondent paid off the $750 note and on March 17, 1956, she paid Oldham $72.32 as interest on the $2,355.42 note.

At this time a discussion took place concerning an extension of this note. Respondent proposed that she pay it off in monthly installments, and Oldham said that he would "try to get along with her." On March 20, 1956, respondent gave Oldham $100 in cash, but he told her that real estate taxes assessed against her property in the amount of $109.30 were due and that the money should be used to pay those taxes. Respondent then gave Oldham the additional $9.30, and he used this money to pay the taxes on March 26. However, on March 23, after Oldham had received the $109.30 from respondent, and before he paid the taxes, and with no notice whatever to respondent (because, as he said, he "didn't think it was any of her business") he caused the trustee in the deed of trust securing the $900 note to start foreclosure proceedings on the basis that respondent was in default.

When respondent learned of the foreclosure proceedings she called Oldham, and he advised her that the foreclosure was for the purpose of getting rid of the mechanics' lien. Respondent demanded that he stop the foreclosure proceedings, but he refused to do so, and at the trial his explanation was that he "didn't pay any attention to what she said" because "I was looking after myself." At one time he gave as a reason for not calling off the foreclosure that "somebody had to pay for the advertisement and I wasn't going to" do so. The property was sold by the trustee on April 20, 1956, and appellant Rutlader, acting as an agent for A. F. Stephens and using his money, purchased the property, although Stephens was also personally present.

The first point in the brief of appellant Oldham is as follows: "The essential difference between purchasing a debt and paying it, consists not in what is done nor in the manner of doing it, but in the intention with which the consideration is paid and accepted, whether to extinguish the debt or keep it alive. The note was due. The foreclosure valid and decree erroneous." By reason of a liberal construction of Supreme Court Rule 1.08, 42 V.A.M.S., we shall consider that appellant Oldham contends that the trial court erred in finding, and ruling in accord with such finding, that the $900 note was paid, that is, that the debt was extinguished by the transaction in Mr. Howard's office on March 16, 1955. In the briefs of the other appellants similar contentions are made, and it is also contended that there was not sufficient proof of fraud on the part of Oldham or that he violated a fiduciary relationship.

■ Appellant Oldham cites several cases to the effect that when a stranger pays his money for a note and "takes it up," the presumption is that he bought it, and not that he has paid it off. For example, see State ex rel. Gentry v. Hostetter, 343 Mo. 1090, 125 S.W.2d 72. We do not disagree with the general rule relied on, but it is not applicable to this case. Oldham was not a "stranger" as that term is used in the cited cases. Respondent placed "the entire matter" in Oldham's hands, and he was respondent's attorney employed by her to represent her in this particular matter, and as such he stood in a fiduciary relation to his client, which relation has been described as one "exacting the utmost good faith on the part of the attorney," State v. January, 353 Mo. 324, 182 S.W.2d 323, 326.

In his capacity as attorney for respondent, Oldham proposed that the outstanding notes be bought up and that the indebtedness on respondent's property be refinanced. He then proceeded to bring this about, and while it is true that he became the lender of the money, he also remained her attorney. He fully understood this relationship, because at the time he loaned the money he also charged $750 as his attorney fees and demanded and received a note in payment thereof which he subsequently collected. Oldham then paid to Stephens the money which he had loaned to respondent, and he received in

return the two notes, one of which was the $900 note. In doing this, he acted as respondent's attorney and not as a "stranger" using his own money to purchase the note. Actually, it was respondent's money that Oldham paid to Stephens for the $900 note. But, in any event, "an attorney cannot deal for himself in the subject-matter of the litigation to the prejudice of his client's interest, and can in no case, without the client's consent, buy, and hold, otherwise than in trust, any adverse title or interest touching the thing to which his employment relates; all such purchases inure to the benefit of the client." 5 Am.Jur., Attorneys at Law, § 58. See also Demmel v. Hammett, 360 Mo. 737, 230 S.W.2d 686. Respondent unequivocally testified that she did not consent that Oldham hold the $900 note as security, and that she intended that the note be extinguished. When Oldham was asked if he told respondent that he was going to release the $1,100 note but hold the $900 note, he testified, "I have answered that two or three times that I didn't tell her anything." There is no question whatever but that the arrangement which Oldham now contends to have existed was entirely without the knowledge and consent of respondent.

We conclude and hold that when Oldham paid respondent's money to Stephens to obtain the $900 note, which Stephens testified was then due, the note was then paid and the debt extinguished. The rule is stated in Tiedeman on Commercial Paper, § 371, p. 639, as follows: "Payment consists of the performance of a contract, with the intention of extinguishing the liability of the party paying, or the party for whom the payment is made. The same acts may and do constitute a sale when the partners intend to transfer, instead of extinguishing, the claim on the contract. But in order that the transaction might constitute a sale, the party paying and the party receiving it must agree it shall be a sale. The presumption of law is strongly in favor of its

being a payment, and this presumption can only be rebutted by strong proof of a contrary intention." See also 2 Daniel, Negotiable Instruments (6th ed.), § 1393, and 10 C.J.S. Bills and Notes § 449 b (3). Bacon v. Reichardt, Mo.Sup., 208 S.W. 24, is particularly interesting because of the similarity of the circumstances under which the note was taken up, and in which it was held that the note was discharged and the debt extinguished. We also conclude that Oldham held the $900 note as trustee for respondent, and that the foreclosure thereon was a wrongful and fraudulent act on his part.

Appellant Oldham's second point, in substance, is that the trial court erred in finding that he agreed to extend the time for payment of the $2,355.42 note because "there was no meeting of the minds in the alleged verbal agreement extending the time for payment," and that the alleged extension was not supported by sufficient and valid consideration and was, therefore, "a mere nudum pactum." Point III in the brief of appellant Howard and a portion of point II in the Stephens brief are to the same effect.

The trial court found that "Oldham agreed with plaintiff [respondent] to extend the $2,355.42 note upon the payment of $100 per month." Upon our separate examination of the evidence that is also our conclusion. But the correctness of that finding does not affect the result of this appeal. Assuming that this note was due and that there was no agreement for an extension, Oldham did not request the trustee to foreclose pursuant to the deed of trust securing that note, and the trustee admittedly did not do so. He foreclosed on the deed of trust securing the $900 note as specifically instructed by Oldham. Perhaps, appellant Oldham's contention is that since he held the $900 note as collateral security for the $2,355.42 note which was in default, he could foreclose on the $900 note as collateral security without first foreclosing on the $2,355.42 note. We need not determine if he could do

this under the assumed factual situation because we have determined that he did not hold the $900 note as a purchaser thereof but as trustee for respondent.

Appellant Oldham's third and last point is as follows: "This being a case in equity, the trial court in the case at bar, erred in its decree, in allowing plaintiff Mrs. Chandler $1,000 actual damages and $1,000 punitive damages against defendant Jay L. Oldham, on count II of her petition because there are mutual and reciprocal obligations in the relations of attorney and client devolving upon her part, which she did not observe or follow and give defendant Oldham all the facts concerning the matter she takes to him and make a full and fair disclosure of the entire situation of encumbrances and possibility of liens on her home." Under this point the argument is first directed to the proposition that Oldham became the purchaser of the note, and that the deed of trust securing it was still in existence and could be relied on by Oldham as security for the note. This contention has previously been disposed of adversely to Oldham's contention. From the remaining argument in the brief we find three contentions pertaining to the allowance of damages by the trial court.

■ Appellant Oldham cites Beetschen v. Shell Pipe Line Corporation, 363 Mo. 751, 253 S.W.2d 785, and purports to quote therefrom a statement which we do not find in the precise language quoted, but with which we do not disagree, to the effect that to make a submissible case on punitive damages there must be a showing of the intentional doing of a wrongful act without just cause. Apparently Oldham contends that the evidence does not support such findings in this case, but no further statement is necessary to show that the foreclosure by him pursuant to the $900 note "was certainly intentional, it was a wrongful act and was done without just cause or excuse and was therefore wilful, and warranted the submission of punitive dam-

ages." See Beetschen v. Shell Pipe Line Corporation, supra, 253 S.W.2d at page 787.

Appellant Oldham next contends that respondent is not entitled to actual or punitive damages because "the necessity to foreclose to shut out the mechanics' lien" was caused by her deliberately and willfully concealing from her attorney the facts concerning the work done on the house which resulted in the mechanics' lien. We need not determine what effect the failure of respondent to tell Oldham about the work being done on the house would have on respondent's right to recover damages, either actual or punitive, because as a result of our examination of the evidence and the circumstances we do not agree that Oldham had no knowledge of the work, and of course, in any event, this did not result in any "necessity to foreclose" in the manner in which he did.

The work on the house which resulted in the filing of the notice of the mechanics' lien had been completed before respondent contacted Oldham and employed him as her attorney in connection with the foreclosure in 1955. Although Oldham contends that respondent did not tell him that the work had been done on the house, respondent denies this emphatically. It does appear that respondent testified that she did not, prior to his loaning her the $2,355.42, tell Oldham anything about a mechanics' lien, but the notice of that lien was not filed until the day after she signed the $2,355.42 note. Respondent testified that she did tell Oldham that the work had been done on the house and that it had not been paid for. According to respondent, when she employed Oldham in connection with the foreclosure in 1955, he came to her house and asked for full information concerning her property and the obligations against it, and that at that time she told him about the work. When the suit to enforce the mechanics' lien was filed in April 1955, respondent called Oldham and employed him as her attorney to represent her in that matter. Pursuant to that employment Old-

ham filed an answer in the mechanics' lien suit. There is nothing in the record to indicate that when Oldham learned of the suit to enforce the lien, he then or at any time before the foreclosure, made any protest to or raised any question with respondent as to why he had not previously been told about this claim.

Oldham is an experienced real estate lawyer, and it is inconceivable that one so experienced made no effort to determine if there was any potential lien on the property to be used as security for a loan to be made by him. He does not claim that he asked respondent and she denied that the work had been done, or that she claimed that the work had been paid for. He merely contends that she did not come forward voluntarily and tell him about the work on the property which could develop into a lien. We are of the opinion that Oldham had actual knowledge of the house repairs and that he loaned the money to respondent knowing full well of this claim, but that it was about ten or eleven months after the suit to enforce the lien was filed when he first became concerned about it, and that was when he discovered that the notice of the mechanics' lien was filed the same day as his deed of trust.

Appellant Oldham has also cited authority in his brief to the effect that it has generally been held that equity will not award punitive damages. See 25 C.J.S. Damages § 117, and Bellerive Country Club v. McVey, 365 Mo. 477, 284 S.W.2d 492. But in this case no damages were allowed in connection with respondent's claim for equitable relief. The judgment expressly states that the damages were awarded pursuant to count II, which, as previously stated, was an action at law, and which was voluntarily tried by all the parties before the trial court sitting without a jury.

We have considered every matter pertaining to the allowance of the damages which has been urged on this appeal, and on the basis of the reasons advanced we see no reason to disturb the judgment of the trial court in this respect.

Appellant A. F. Stephens vigorously contends that he was an innocent purchaser for value at the foreclosure sale on April 20, 1956, and is therefore entitled to retain title to the property. However, Stephens testified that he knew Oldham was a lawyer and that he was acting as attorney for respondent at the meeting in Mr. Howard's office when he (Stephens) gave Oldham the $1,100 and $900 notes in return for the face amounts thereof and the accrued interest thereon. Although he testified that he did not know that respondent had given Oldham a note for $2,355.42, we note that Mr. Howard said that he knew the $900 note "was carried into the $2,300 note" because he was told so at the meeting in his office. In any event, Stephens knew that he delivered the $900 note to Oldham after receiving full payment for it, and he knew or should have known, particularly in view of his experience as a licensed real estate broker, that Oldham occupied a fiduciary relation to respondent, and that in the absence of a specific agreement between Oldham and respondent providing otherwise (which he had no reason to believe existed and which in fact did not exist), the delivery of the note to Oldham under the circumstances was the same as a delivery by him of the note directly to respondent, and that Oldham, if he retained possession of the note, held it as trustee for respondent. Stephens also knew that the foreclosure sale on April 20, 1956, was based on the same $900 note that he had previously delivered to the maker (through her attorney) in return for full payment thereof, and that the person who had instructed the trustee to foreclose on that note was the same attorney to whom he had delivered the note on behalf of the maker.

Stephens cites several cases to the effect that an oral agreement between parties to a foreclosure proceeding will be held to be ineffectual as against an innocent purchaser

for value without notice thereof. For example, see Adams v. Boyd, 332 Mo. 484, 58 S.W.2d 704; Butler Building & Investment Co. v. Dunsworth, 146 Mo. 361, 48 S.W. 449; Powers v. Kueckhoff, 41 Mo. 425, 97 Am.Dec. 281; Stewart v. Omaha Loan & Trust Co., 283 Mo. 364, 222 S.W. 808. We do not disagree with the general rule for which these cases are cited, but Stephens does not make it clear in his brief, and we are not able to determine, just what oral agreement Stephens claims was in existence and which should be held to be ineffectual as to him. If he claims that there was an oral agreement that Oldham hold the $900 note as additional security for the $2,355.42 note, which we have concluded there was not, then Stephens' position necessarily would be that the oral agreement should be held to be effectual, not ineffectual. If he contends that there was an oral agreement that the $2,355.42 note be extended, there was no foreclosure on that note.

◼ Stephens also cites several cases, for example, Schwarz v. Kellogg, Mo.Sup., 243 S.W. 179; Beatie v. Butler, 21 Mo. 313, 64 Am.Dec. 234; Potts v. Smith, Mo.Sup., 178 S.W. 881, to the effect that equity will not deprive an innocent third party of his vested rights under a foreclosure sale because of fraud or mistake of others of which he has no notice. The converse of this rule is that "A purchaser [at a foreclosure sale] may not claim protection against rights or equities of which, at the time he made his payment, he had actual knowledge, or where he had notice of facts sufficient to put him on inquiry." 59 C.J.S. Mortgages § 764 a, p. 1418. Here Stephens delivered a note, which was in default, to the maker thereof (through her attorney) in receipt of the full payment thereof, and then approximately one year thereafter he learned that the same attorney to whom he had delivered that note was seeking to collect it by way of foreclosing on the deed of trust securing its payment. Without more, these facts would put any reasonable person on notice to make in-

quiry. When Stephens bought the property through his agent Rutlader, admittedly without making any inquiry whatever, he purchased the property not as an innocent purchaser, but subject to the equitable rights of respondent to have the sale set aside on the ground that Oldham had fraudulently and wrongfully directed and caused the foreclosure.

This conclusion makes unnecessary any consideration of Stephens' contention that as between two innocent victims of Oldham's fraudulent conduct (that is, respondent and A. F. Stephens), respondent should be the one to suffer because it was her negligence in "failure to release the $900 note" which made the wrongful conduct of Oldham possible.

We have not specifically mentioned each and every contention in the three separate briefs filed by the appellants. There are numerous duplications between the briefs with only immaterial differences in wording. In addition, some of the contentions consist of challenges to specific findings of fact by the trial court. Of course, on this appeal we have made our own findings based on our own separate and independent examination of all of the evidence. Even though not specifically mentioned, each contention in the three briefs of the appellants is directly ruled, or is necessarily disposed of by the conclusions we have reached and set forth herein.

We conclude, and therefore rule, that the judgment entered by the trial court is not erroneous for any of the reasons assigned by the appellants, and it is for that reason affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.