**Bob TRIPLETT, Respondent,**

v.

**Ethel WYATT, Executrix of the Estate of Bige Wyatt, Deceased, Ethel Wyatt, Ophelia Sampson, Belma Triplett, et al., Defendants,**

*Ethel Wyatt, Executrix of the Estate of Bige Wyatt, and Ethel Wyatt, Appellants.*

**No. 31121.**

St. Louis Court of Appeals.

Missouri.

Sept. 18, 1962.

Motion to Modify for a Rehearing or to Transfer to Supreme Court Denied Oct. 15, 1962.

387

Sidney R. Redmond, St. Louis, for defendants-appellants.

Librach, Heller & Byrne, William P. Byrne, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

This is an action for a declaratory judgment to determine the ownership of certain United States Treasury bonds of the face value of $11,500. The court decreed that plaintiff was the owner, and defendants Ethel Wyatt, individually and as Executrix of the Estate of Bige Wyatt, deceased, appealed.

Plaintiff has moved to dismiss the appeal on the grounds that the defendants' brief fails to comply with Civil Rule 83.05, V.A.M.R. For their statement of facts the defendants merely digested the pleadings and the testimony of each witness. This is *not* a compliance with Rule 83.05, although the proper form of statement may be *followed* by a statement of the testimony of each witness, if desired. Swope v. Emerson Electric Mfg. Co., Mo., 303 S. W.2d 35; Repple v. East Texas Motor Freight Lines, Mo., 289 S.W.2d 109. Plaintiffs also criticize, with some justification, certain points relied on. However, in the interests of justice we have decided to overrule the motion to dismiss and to consider the appeal on its merits, Civil Rule 83.09, but our action should not be construed to

mean that the rules may be disregarded or ignored with impunity.

Defendants have raised eight points on appeal. While variously stated, in three of them the contention is made that the evidence is not sufficient to support the judgment and decree. In the remainder defendants seek a reversal of the judgment because of alleged errors in the admission and exclusion of evidence. Of course, we try a case of this nature de novo and are not required to reverse a judgment on account of incorrect rulings on evidence. Civil Rule 73.01; In re Diehl's Estate, Mo. App., 239 S.W.2d 523. In our review of a court-tried case we do not consider errors, as such, in the admission or exclusion of evidence, but in arriving at our findings and conclusions we consider only that evidence which was properly admissible, whether admitted or excluded below. Louis v. Andrea, Mo., 338 S.W.2d 96.

The evidence reveals that starting in 1936, the deceased, Bige Wyatt, doing business as an individual under the name of Wyatt's Taxicab Company, operated a fleet of taxicabs under the authority of various certificates of convenience and necessity granted him by the Board of Public Service of the City of St. Louis. Certain ordinances required the holder of a certificate to post a surety bond with the Board, with the City as obligee, conditioned upon the payment of judgments for personal injuries and property damages resulting from the holder's negligence in the operation of his taxicabs. Pursuant thereto, on September 24, 1948, Wyatt posted a bond in the amount of $11,500 with the Board, in which he was the principal and the Massachusetts Bonding and Insurance Company was the surety. To indemnify the Bonding Company from any loss on the surety bond, Wyatt deposited with it the four bearer 2½% Treasury bonds in dispute, two being for $5,000, one for $1,000, and one for $500, all with semiannual interest coupons attached. At the time the deposit was made Wyatt and the Bonding Company executed an instrument titled "Non-Negotiable Receipt and Agreement for Collaterals", by which it was agreed that the Bonding Company might use the collateral to reimburse itself for any losses or expenses experienced on the surety bond, and that if none were incurred it would return to Wyatt or his duly authorized representative the collateral or any balance or proceeds thereof which remained in its hands.

On July 16, 1948, Wyatt, his wife, defendant Ethel Wyatt, and one Ophelia Sampson executed Articles of Incorporation for a corporation named Wyatt Taxi, Inc. The Articles were filed with the Secretary of State on July 19, 1948, and a Certificate of Incorporation was issued the same day. Wyatt Taxi, Inc. then filed with the Board of Public Service an application for a certificate of convenience and necessity, as a step in its efforts to take over the taxicabs operated by Wyatt as an individual. The Board denied the application on September 21, 1948.

Wyatt thereafter continued to operate in his individual capacity. But on December 5, 1950, he, Mrs. Wyatt, and Ophelia Sampson executed new Articles of Incorporation for another corporation, to be named Wyatt Taxicab Company. These were filed with the Secretary of State, and a Certificate of Incorporation issued by him on December 27, 1950. Wyatt Taxicab Company then filed with the Board of Public Service, on March 20, 1951, an application for a certificate. The Board issued a certificate to Wyatt Taxicab Company on April 25, 1951, conditioned upon its compliance with certain ordinances, and further conditioned upon the corporation assuming all liabilities of Wyatt incurred by him in connection with his operation of the taxicabs prior to April 24, 1951. Wyatt's individual certificates were revoked.

Under the ordinances previously referred to Wyatt Taxicab Company was required to file a surety bond in order to obtain its certificate. Instead of filing a new bond with the Board, the corporation filed a rider

or amendment to the bond posted by Wyatt, by which the Bonding Company agreed that the surety bond was amended to name Wyatt Taxicab Company as the principal, effective as of April 24, 1951. As to the collateral he had deposited, Wyatt wrote the Bonding Company a letter dated December 11, 1951, the body of which read:

"'I hereby authorize the Massachusetts Bonding and Insurance Company to transfer monies held as collateral on of Bige Wyatt d/b/a Wyatt Cab Company now known as Wyatt Taxi Cab Company, Inc.

"'I hope this matter will be taken care of at the earliest possible date.'"

Wyatt Taxicab Company, with Wyatt as president, operated the business until 1954. By a written Sale and Purchase Agreement dated July 31 of that year, Wyatt agreed to sell, and plaintiff agreed to buy, "* * * all of the no par common stock issued and outstanding amounting to 1050 shares of the common stock of the Wyatt Taxicab Company, Inc. * * *", for the sum of $35,000. The Agreement provided that plaintiff was to pay Wyatt $3,000 in cash, and the balance, together with interest thereon at 6%, was to be evidenced by 78 notes for $500 each, the first to be payable September 15, 1954, and the remainder to become due in numerical order in each succeeding month. It was further provided in the Agreement that Wyatt was to hold the certificates of stock as collateral until the last note was paid, and there was introduced in evidence a receipt from Wyatt to plaintiff acknowledging receipt of three certificates for 1050 shares to be held as collateral.

Prior to his purchase of Wyatt's stock in Wyatt Taxicab Company plaintiff owned all of the stock in St. Louis Cab Company, which likewise held a certificate of convenience and necessity to operate cabs in the City of St. Louis. Massachusetts Bonding and Insurance Company was also the surety on the bond of St. Louis Cab Com-

pany posted with the Board of Public Service. Plaintiff operated both corporations as separate entities until late in 1956 or early in 1957, when he merged Wyatt Taxicab Company into St. Louis Cab Company. The Bonding Company thereupon cancelled the surety bond which had been amended to name Wyatt Taxicab Company as principal, and by an endorsement increased the surety bond of St. Louis Cab Company from $13,500 to $15,000. Plaintiff continued to operate the St. Louis Cab Company until July 15, 1957, when he sold all of his stock in that corporation to Marcella Cab Company for $65,000. By the terms of the written sales agreement, introduced in evidence, it was provided: "That Bonds now held by the Massachusetts Bonding Company in the amount of $26,500 are to be excluded from this sale and remains the personal property of Bob Triplett." Both plaintiff and his accountant, P. J. Parnas, testified that the St. Louis Cab Company was indebted to plaintiff, and that either before the sale of stock to Marcella Cab Company, or in connection therewith, the St. Louis Cab Company transferred to plaintiff its interest in all bonds on deposit with the Bonding Company as collateral, including the $11,-500 of Treasury bonds in dispute.

It appears from the testimony of Stanley M. Tugel, superintendent of the Bond Department of the Bonding Company's St. Louis office, that physical possession of the Treasury bonds originally deposited by Wyatt in 1948 was at all times held by the Treasurer's Department at the home office in Boston. As the interest coupons matured each six months, in June and December, it was the practice of the Treasurer's Department to detach the coupons and send them to the St. Louis office. That office, in turn, notified Wyatt, and after its incorporation, Wyatt Taxicab Company, that the interest coupons might be obtained by calling for them and signing a receipt. It will be recalled that Wyatt sold his stock in the corporation to plaintiff on July 31, 1954. The following December the Bonding Company

notified Wyatt that the December 15 coupons were available. Wyatt replied by a letter dated December 22, 1954, the body of which read:

" 'Wyatt Taxicab Company, Inc. was sold to Mr. Robert Triplett, 4837 Page Avenue, on July 31, 1954.

" 'Mr. Triplett will pick up the interest coupons which were due December 15, 1954 on the U. S. Treasury Bonds held in connection with the taxi bond.

" 'I am sending him your letter and a copy of this notice to you. Thanks very much for your kindness in writing me.' "

Tugel testified that thereafter the local office of the Bonding Company continued to send the notices to Wyatt Taxicab Company, but that the coupons were called for and delivered to plaintiff, or his representative, until Wyatt Taxicab Company was merged into St. Louis Cab Company in 1957. After that, the notices were sent to plaintiff as an individual, and he continued to call for and was given the coupons. Tugel also testified that neither Wyatt nor anyone on his behalf ever complained that the coupons were being improperly delivered.

Late in 1959 the Treasurer's Department of the Bonding Company changed its system of handling the interest coupons. It retained for its own account those which fell due in December, and in their stead sent a check for the interest, made payable to Bige Wyatt, doing business as Wyatt Taxi. According to Tugel, the check was made payable to Wyatt because the Underwriting Department of the Bonding Company had never notified the Treasurer's Department that Wyatt had incorporated his business in 1951 and that the surety bond had been amended to name Wyatt Taxicab Company as principal. The check for the interest coupons eventually reached Mrs. Wyatt, who had been appointed executrix of her husband's estate following

his death on November 16, 1959. The right to the proceeds of it, and another issued in June 1960, apparently precipitated the dispute between plaintiff on the one hand, and Mrs. Wyatt, individually and as executrix on the other, as to the ownership of the Treasury bonds, and this suit followed. Hanover Insurance Company, successor to Massachusetts Bonding and Insurance Company, appeared below in the role of stakeholder. The contesting parties do not dispute the claimed right of the Bonding Company, under the collateral agreement, to hold the Treasury bonds until the expiration of the statutory period of limitations against Wyatt Taxicab Company, and they stipulated that the Bonding Company was to be allowed the sum of $500, chargeable against the collateral, as a reasonable attorney's fee for the services necessarily incurred in connection with this litigation.

█ It is readily apparent that the decisive issue of fact is whether the Treasury bonds were a corporate asset of Wyatt Taxicab Company at the time plaintiff purchased Wyatt's stock therein. If they were, then the transfer of all of the stock to plaintiff included all of the assets of the corporation, together with all rights and liabilities incident to ownership of such shares. Carter v. Matthey Laundry & Dry Cleaning Co., Mo., 330 S.W.2d 771; Mickelberry's Food Products Co. v. Haeussermann, Mo., 247 S.W.2d 731. And the subsequent merger of Wyatt Taxicab Company into St. Louis Cab Company, and the conveyance of the bonds to him by the latter, would complete plaintiff's chain of title. The trial court found that the Treasury bonds became and remained an asset of the Wyatt Taxicab Company at the time plaintiff bought the stock from Wyatt, and we are of the opinion that there is an abundance of evidence, both direct and circumstantial in nature, to support the finding.

Plaintiff read into evidence the deposition of P. J. Parnas, a certified public accountant, who testified that he had served as Wyatt's accountant from 1936 until his

death in 1959, and that he was then acting as the accountant for Mrs. Wyatt. Parnas identified and there were admitted into evidence at the trial, over defendants' objections, certain financial records marked Exhibits 1, 1-A, 2 and 3. The witness identified Exhibit 1 as a duplicate original statement of the assets conveyed to the corporation formed by Wyatt in 1948. We shall disregard this exhibit for the reason that it is apparent on its face that it pertains to the corporation named Wyatt Taxi, Inc., formed by Wyatt in 1948 when he unsuccessfully sought authority from the Board of Public Service to operate in a corporate form. Wyatt Taxicab Company, the corporation with which we are concerned, was not formed until December, 1950.

Parnas testified that when Wyatt Taxicab Company was incorporated and commenced to do business in 1951, he set up the company's books of account to show the capital with which it began operation. He conferred with Wyatt and prepared a work sheet to show what should be transferred, and testified that the corporate books he set up contained the same figures. The work sheet was identified as Exhibit 1-A. Among the assets listed thereon was "Investment Bonds—$11,539.38." Parnas stated that to his own knowledge this item included the $11,500 of U. S. Treasury Bonds which are the subject of this suit, plus the interest then accumulated thereon. Both Parnas and Richard B. Green, secretary of Marcella Cab Company, testified that the books and records of Wyatt Taxicab Company and St. Louis Cab Company had been delivered to Marcella when it acquired the stock of St. Louis Cab in 1957. Green stated that such books and records were misplaced when Marcella later moved its office. And both Parnas and Green testified that they had each made a search but had been unable to find them. Proof having been made of the loss of the original books of account, Exhibit 1-A, prepared by Parnas and testified by him to be an accurate statement of what the books showed, was admissible at the best secondary evidence. Anchor Milling Co. v. Walsh, 108 Mo. 277, 18 S.W. 904; Scrivner v. American Car & Foundry Co., 330 Mo. 408, 50 S.W.2d 1001; Wilson v. Supreme Liberty Life Ins. Co., Mo.App., 343 S.W.2d 649. Parnas' independent recollection of the facts, refreshed by his work sheet, was likewise admissible. Schroer v. Schroer, Mo., 248 S.W.2d 617.

Exhibit No. 2 was identified by Parnas as a duplicate original of a financial statement he prepared for Wyatt Taxicab Company covering its fiscal year ending April 30, 1954. The exhibit was comprised of a balance sheet, and an operating statement showing receipts and disbursements. The balance sheet included as part of the corporate assets the item: "Government Bonds (Cost)—$11,539.38," which Parnas testified were the bonds in dispute, carried on the corporation's books at the same figure as originally entered. The operating report portion of the exhibit showed the receipt of income from: "Government Bond Interest—$287.50." Parnas testified that this was interest on the subject bonds, and that it was entered on the corporation's books as income, and reported accordingly on its income tax returns. He also stated that this financial statement was submitted to plaintiff preceding plaintiff's purchase of Wyatt's stock, to let plaintiff know the financial condition of the company at the end of the last fiscal year. Exhibit 2, being a duplicate original, was admissible without proof of loss of the original. Schroer v. Schroer, supra.

Exhibit 3 was a book containing twelve sheets, each of which is a separate operating statement for the individual months from January, 1954 to December, 1957, inclusive. The statements for the months of January, June, and December each contain an income entry of "Bond Interest—$143.75." Parnas testified that he prepared each statement in Exhibit 3, and that the book was one of the records of the corporation which was turned over to plaintiff when plaintiff bought Wyatt's stock. Parnas also said that after the sale he

continued to serve as accountant for Wyatt Taxicab Company, and that while it was in existence the company reported the interest on the Treasury bonds as income. Being one of the original records of the corporation, the exhibit was properly admitted in evidence.

We think it is clear from the testimony of Parnas and Exhibits 1–A, 2 and 3 produced by him that the bonds in question became part of the corporate assets of Wyatt Taxicab Company at the time it commenced to do business, and that they remained such at the time Wyatt sold his stock in that company to plaintiff. If any further evidence was needed to support that conclusion it was supplied by the evidence as to Wyatt's actions and attitude regarding the bonds. By his letter of December 11, 1951, shortly after Wyatt Taxicab Company was incorporated and substituted as principal on the surety bond, Wyatt authorized the Bonding Company to hold as collateral for the amended bond the "monies" which it had been holding when he was principal. Of course, Wyatt had no money on deposit with the Bonding Company, and it is obvious that by the word "monies" he meant the subject Treasury bonds then held as collateral. Defendants argue that since the collateral receipt issued to Wyatt was a non-negotiable instrument, it could be transferred only by an assignment, citing State ex rel. Gentry v. Hostetter, 343 Mo. 1090, 125 S.W.2d 72. Assuming that to be true, Wyatt's letter constituted the assignment. Furthermore, when the Bonding Company in December, 1954, advised Wyatt that the current interest coupons were available, Wyatt by his letter of December 22, 1954 informed the company that Wyatt Taxicab Company had been sold to plaintiff, and that plaintiff would pick up the coupons. Thereafter, according to Tugel, Wyatt never demanded or sought to obtain the interest coupons prior to his death in 1959.

The record discloses that Wyatt was an experienced businessman, with varied and extensive financial interests. In addition to operating a taxicab business since 1936 he owned and ran a filling station, engaged in the real estate business, invested extensively in real estate, and was an insurance broker for the sale of automobile, fire, and various other kinds of insurance. If Wyatt had believed that he owned the Treasury bonds it is highly unlikely that a man of his financial and business experience would have failed to demand the return of the bonds, or at least the delivery of the interest coupons, during the five years which elapsed between the sale of his stock and his death.

For what it is worth, we have taken into consideration the certified copy of the 1954 Federal Income Tax Return of Bige and Ethel Wyatt which defendant offered, but which the court excluded. The defendants' point in offering the return was that in computing Wyatt's capital gain on the stock of Wyatt Taxicab Company sold to plaintiff, the cost basis was stated to be $10,500. Defendants argue from this that if Wyatt's cost was $10,500, the $11,500 of Treasury bonds could not have been transferred to the corporation when it was organized. What they overlook, however, is Parnas' testimony, supported by Exhibit 1–A, that while the Treasury bonds and other assets totaling $14,388.16 were transferred to it, the corporation assumed liabilities of Wyatt amounting to $3,888.16, so that the net amount of assets transferred was $10,500. Thus Wyatt's cost basis of the stock was that figure.

The judgment is for the right party and should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is affirmed.

ANDERSON, P. J., WOLFE, J., and JAMES D. CLEMENS, Special Judge, concur.