Kenneth E. HEINTZ,
Plaintiff-Appellant,

v.

Suzette E. WOODSON, Frank B. Allan,
and Dorothy V. Allan,
Defendants-Respondents.

No. 50363.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 24, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 29, 1986.

Application to Transfer Denied
Sept. 16, 1986.

H. Clay Billingsley, St. Louis, for plaintiff-appellant.

Thomas M. Lang, Clayton, for defendant-respondent Woodson.

Charles E. Roth, Clayton, for defendants-respondents Frank and Dorothy Allan.

PUDLOWSKI, Judge.

Appellant petitioned for a declaratory judgment against respondents regarding *inter alia* the status of certain real estate located at 801 Old State Road, St. Louis County and claims against it established in 1983 by a settlement agreement. Respondents Allan counterclaimed for declaratory

judgment against appellant and filed a cross claim against respondent Woodson. Respondent Woodson also counterclaimed for declaratory judgment against appellant and later motioned to cite appellant for contempt and to enforce prior court orders. Both appellant and respondent Woodson motioned to modify the decree of dissolution, the motions later being withdrawn by both parties. The trial court consolidated the actions and found for respondents Allan on the counterclaim against appellant and cross claim against respondent Woodson and for respondent Woodson on her counterclaim and motions against appellant. The trial court also ordered appellant to hold respondent Woodson harmless and indemnify her on respondents Allan's cross claim. Appellant appeals. We affirm with modifications and remand to the trial court for determination consistent with our opinion.

Appellant and respondent Woodson were granted a decree of dissolution of their marriage on November 7, 1979. As a result, the custody of the family's three children was awarded to respondent Woodson, the wife, with appellant, the husband, responsible for child support. The decree also divided various marital property and provided respondent Woodson maintenance. Most significantly, it provided that appellant and respondent Woodson would sell the family home at 801 Old State Road and equally divide the proceeds. In the interim between dissolution and sale, respondent Woodson would live in the house while appellant continued to pay the mortgage, taxes and insurance. Appellant and respondent Woodson had purchased the property in 1973 from Albert and Vera Grosse. Appellant and respondent Woodson at that time executed a promissory note, secured by a deed of trust, for $71,000 to the Grosses.

Soon after, appellant neglected to make his child support payments. Respondent Woodson filed several writs of execution and, on September 30, 1980, the trial court found appellant in contempt of court. Further, after April 9, 1981, appellant ceased making the mortgage payments.[1] This resulted in Mrs. Grosse accelerating the debt and declared it due.[2] With foreclosure threatened, on July 23, 1981, respondents Allan, respondent Woodson's parents, sent Mrs. Grosse $1,467.00. On November 5, 1981, respondents Allan provided Mrs. Grosse an additional $37,394.29 and respondent Woodson paid $10,000. Mrs. Grosse then "assigned" the promissory note to the three respondents. On January 20, 1983, respondent Woodson transferred, for $11,500, her interest in the promissory note to the respondents Allan. On May 19, 1983, Mrs. Grosse executed the assignment of the deed of trust to the respondents.

On September 9, 1982, respondent Woodson filed a "Motion to Determine the Exact Amount Due Petitioner From Respondent and Enforcement of Judgment." Negotiations led to a "Settlement Agreement" being signed on March 22, 1983 which was then made an order of the court. The pertinent provisions relevant to this appeal are:

1) As of March 22, 1983 appellant owed respondent Woodson $250 in child support.

2) That respondent Woodson would quit claim her interest in the house to appellant for $75,000.

3) That appellant would hold respondent Woodson harmless "from all payments due on the note secured by Deed of Trust ... and any and all other liens, claims or encumbrances." Further, appellant "recognize[d] that said note secured by Deed of Trust was assigned to Frank Benjamin Allan, Dorothy Virginia Allan and Suzette Elaine Heintz Woodson."

After this settlement, appellant arranged financing for the $75,000 tender for respondent Woodson's interest. Contrary to the court order, he demanded that respondent

---

1. On September 21, 1980, respondent Woodson remarried. Her new husband moved into the house. $46,058.65 was then owing at the time of default.

2. Mr. Grosse, the other payee of the note, had died before these events occurred.

Woodson assume responsibility for the amount then owed to respondents Allan out of the $75,000. Respondent Woodson refused. Also, appellant again fell behind in his child support payments.

Appellant then filed this declaratory action. After hearing, the court determined the following:

1) That appellant be found in contempt for his refusal to pay $5,920.28 in past due child support.[3]

2) That appellant and respondent Woodson were owners as tenants in common of the Old State Road property.

3) That respondents Allan were the owners of the promissory note secured by a Deed of Trust on the Old State Road property.

4) That appellant's right under the court order to require respondent Woodson to quit claim her interest in the Old State Road had expired.

5) That respondent Woodson had not defaulted on her obligation under the 1983 court order.

6) That appellant and respondent Woodson pay respondents Allan $64,321.01 in principal, interest and attorney's fees.

7) That appellant pay respondent Woodson $5,910.18 for past due child support and that child support be set at $100 per week.

8) That appellant pay respondent Woodson $10,000 in attorney fees.

9) That appellant hold respondent Woodson harmless from any and all liabilities and damages sustained by her as a result of this judgment, as well as any and all liabilities and damages resulting from any forfeiture or foreclosure. Further, the court declared that the above liabilities and damages including the $64,321.01 owed to respondents Allan be impressed as a lien on appellant's interest in the Old State Road property.

Appellant raises three points on appeal. First, he states that the trial court erred in finding that the promissory note had been purchased by the respondents from Mrs. Grosse and that, instead, it should have found that the action was a payment which served to discharge appellant from his obligation on the note. Secondly, he says that the trial court should have allowed evidence as to payments made before the 1983 court order. Finally, he asserts that the court order requiring appellant to hold respondent Woodson harmless is ambiguous and indefinite and thereby does not afford relief from uncertainty.

Appellant presents a two prong attack on the trial court's finding that the "assignment" of the promissory note from Mrs. Grosse to the respondents Allan and respondent Woodson did not discharge appellant from his obligation on the note. First, appellant argues that in such transfers there is a presumption of payment which can only be rebutted by strong proof of a contrary intention. *Chandler v. Howard*, 312 S.W.2d 26, 30 (Mo.1958). The problem with appellant's argument is that this presumption applies when the note is paid by the maker. A presumption of purchase applies when the note is transferred to a stranger to the instrument. *Id.* at 29. Further, even if we were to apply the presumption more favorable to appellant, his argument would still fail for there is strong evidence that the parties intended a purchase. Specifically, Mrs. Grosse wrote on the back of the note "For Value Received I hereby assign this Promissory Note to Frank Benjamin Allan, and Dorothy Virginia Allan and Suzette Elaine Woodson (formerly Suzette E. Heintz)." Considering the standard of review mandated by Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976), we cannot say the trial court erred in finding the intent to purchase.

Appellant's second argument is more compelling and brings before us a novel question on the interpretation of the Uniform Commercial Code. Assuming that among the parties there was a intention to purchase and not make payment, what ef-

---

**3.** Appellant purged himself of this contempt on June 19, 1985.

fect does the transfer by the holder to the co-maker and a stranger to the instrument have on the issue of discharge of the liability of other co-makers of the instrument?

RSMo 400.3–601(3) (1978) provides:

(3) The liability of all parties is discharged when any party who has himself no right of action or recourse on the instrument

(a) reacquires the instrument in his own right; or

(b) is discharged under any provision of this article, except as otherwise provided with respect to discharge for impairment of recourse or of collateral (Section 400.3–606).

RSMo 400.3–603(1) provides in part:

(1) The liability of any party is discharged to the extent of his payment or satisfaction to the holder

RSMo 400.3–603(2) provides:

(2) Payment or satisfaction may be made with the consent of the holder by any person including a stranger to the instrument. Surrender of the instrument to such a person gives him the rights of a transferee (section 400.3–201).

Appellant cites this court to the Kansas Court of Appeals which interpreted § 3–601(3) of the U.C.C. in *Litwin v. Barrier*, 6 Kan.App.2d 128, 626 P.2d 1232 (1981). We agree that payment of a note by one co-maker with a written assignment of the note by the holder to that co-maker does not serve to escape the discharge provision. However, that case differs from this in that here the co-maker did not, alone, reacquire the note. Rather, we have a hybrid case. Unless appellant assumes that respondent Woodson's participation so infected the note, the *Barrier* opinion does not provide guidance for characterizing the respondents Allans' interest. Any such interpretation would run afoul of the RSMo 400.3–603(2) allowance for strangers to the instrument who have obtained possession to assume the rights of transferees. Therefore, we hold that the trial court did not err

in finding that the respondents Allan purchased the note from Mrs. Grosse.[4]

But this leaves us with the question of respondent Woodson's interest in the note. RSMo 400.3–601(3)(a) (1978) would discharge appellant on the note if respondent Woodson had paid the entire amount even if she had attempted to disguise it as a payment. *See Barrier supra*. Further, RSMo 400.3–601(3)(b) (1978) provides for discharge of all parties when a party with no right of action on the instrument (e.g. a co-maker) is discharged under any provision of this article except as provided in the section on impairment of collateral. One provision of this article is RSMo 400.3–603(1) (1978) which states "The liability of any party is discharged *to the extent of his payment* or satisfaction to the holder." (emphasis provided). Therefore, applying those sections together, we conclude that at the time respondent Woodson transferred $10,000 to Mrs. Grosse, the note, including appellant's obligation on it, was discharged a similar amount. As a result, respondents Allan purchased the note, but only to the extent of $37,861.29 paid by them. In finding that the purchase resulted in a higher amount, the trial court erred. As a result, the amount of the lien imposed on appellant's interest is improper and must be recalculated and redesignated.

However, this does not mean that respondent Woodson has no remedy for payment she made. "This court, upon review, is authorized to enter the judgment which the trial court should have entered under the evidence and the law." *Kenny's Tile and Floor Covering Inc. v. Curry*, 681 S.W.2d 461, 465 (Mo.App.1984). The evidence is that respondent Woodson, a co-maker, paid part of the note. "Payment of the note by a co-maker confers a right upon him to sue other co-makers solely for a contribution of their proportionate part of the amount of his outlay." *Heaton v. Dickson*, 153 Mo.App. 312, 133 S.W. 159, 160 (Mo.App.1910). Here there is no need

---

**4.** This is not to say that we would reach the same result if the trial court found that the respondents Allans' participation was other than

a purchase (e.g. a loan to respondent Woodson). The trial court's finding of fact paragraph 19 specifically rules out any such loan.

to determine what proportionate amount appellant must contribute since by the 1983 decree he was ordered to indemnify respondent Woodson for all payments due on the note. When Mrs. Grosse accelerated the debt, the full amount was due. Appellant was required to pay that due amount, and now he must indemnify respondent Woodson that amount. As mentioned above, upon remand, the trial court shall properly determine appellant's obligation to the separate respondents.

Appellant raises two additional points. He contends that the trial court erred in refusing to allow testimony of child support payments made prior to the 1983 court order. Appellant avers that the purpose of his offer of testimony regarding previous payments was to show that at the time of this action, he had paid all amounts due, that previous payments had not been credited, and that, therefore, his actions were not contemptuous. This argument is frivolous. The trial judge, in the case at bar, found that since March 22, 1983, appellant had incurred an additional $10,718.18 in child support obligations of which he had paid only $5,050.00, leaving a $5,660.18 deficit. In that order, the court found that as of March 22, 1983 he owed $250.00 and that all other amounts had been determined and adjusted. Considering this evidence as presented the appellant's point is without merit.

■ Appellant's final point is that the trial court erred in ordering appellant to hold respondent Woodson harmless from any and all liabilities and damages sustained by her as a result of the judgment entered and those liabilities and damages sustained as a result of any forfeiture or foreclosure. Specifically, he says that it is "indefinite and ambiguous in that it is subject to different interpretation and does not therefore afford relief from uncertainty." Appellant's contention that "the scope of the paragraph (sic) 'any and all liabilities and damages' can either be interpreted with a limiting view or with a broad all-encompassing view" is conclusory. The trial court's order requiring him to hold respon-

dent Woodson harmless is patently and simply a mechanism to ensure that he indemnifies her from any adverse results he has caused by his blatant refusal to perform his obligations. We reject appellant's contention.

The order of the trial court is affirmed and remanded to the trial court to modify the judgment consistent with this opinion.

CRANDALL, P.J., and KELLY, J., concur.